C. B. Dalton *et al.*, Complainants, Appellants, *v.* L. E. Kimsey *et al.*, Defendants, Appellees.*

(*Knoxville*, September Term, 1931.)

Opinion filed July 26, 1932.

*On title of amendatory statute, see 25 R. C. L., 869; R. C. L. Perm. Supp., p. 5619; R. C. L. Pocket Part, title ":Statutes," sec. 114.

118

JONES & DAVIS and J. E. ADAMS, for complainants, appellants.

CHAS. C. GUINN, WINSTON H. PRINCE, PAUL R. STEWART, R. P. TAYLOR and D. SULLINS STUART, for defendants, appellees.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

By the bill complainants ask that the School Commissioners of the fourth fractional township of Polk County be enjoined from erecting within the district a building and operating a Junior College therein, upon the ground that it violates certain federal statutes, and because the legislative acts under which the School Commissioners are proceeding are invalid. The Chancellor sustained a demurrer to the bill and dismissed it. The complainants reside within the district, and, with the other residents thereof, are the beneficiaries of the school fund here involved.

The Congress of the United States, by chapter 10, Act of 1806, empowered the State of Tennessee to issue grants and perfect titles to certain lands therein described, provided that "the State of Tennessee, shall moreover, in issuing grants and perfecting titles, locate six hundred and forty acres to every six miles square in the territory hereby ceded, where existing claims will allow the same, which shall be appropriated for the use of schools for the instruction of children forever."

Pursuant to this authority, the General Assembly, by section 13, chapter 2, Acts of 1836, established the Ocoee District, provided for a survey thereof, and directed that the surveyor "lay off and distinguish in his general plan and on his township maps, the *sixteenth section,* if fit for cultivation, and if not, then the section nearest thereto,

which shall be fit for cultivation, to be reserved for the use of schools, in such township forever."

Congress in 1843, by chapter 33, passed the following Act:

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress Assembled,* That the Legislature of Illinois, Arkansas, Louisiana, and Tennessee, be, and they are hereby, authorized to provide by law for the sale and conveyance in fee simple, of all or any part of the lands heretofore reserved and appropriated by Congress for the use of schools within said States, and to invest the money arising from the sales thereof, in some productive fund, the proceeds of which shall be forever applied, under the direction of said Legislatures, to the use and support of schools within the several townships and districts of country for which they were originally reserved and set apart, and for no other use or purpose whatever: *Provided,* Said land, or any part thereof, shall in nowise be sold without the consent of the inhabitants of such township or district, to be obtained in such manner as the Legislatures of said States shall by law direct; and in the apportionment of the proceeds of said fund, each township and district shall be entitled to such part thereof, and no more, as shall have accrued from the sum or sums of money arising from the sale of the school lands belonging to such township or district.

"Sec. 2. *And be it further enacted,* That the Legislatures of said States be, and they are hereby, authorized to make such laws and needful regulations as may be deemed expedient to secure and protect from in-

jury or waste, the sections reserved by the laws of Congress, for the use of schools, to each township, and to provide by law, if not deemed expedient to sell, for leasing the same for any term not exceeding four years, in such manner as to render them productive, and most conducive to the object for which they were designed.

"Sec. 3. *And be it further enacted,* That if the proceeds accruing to any township or district from said fund shall be insufficient for the support of schools therein, it shall be lawful for said Legislatures to invest the same in the most secure and productive manner, until the whole proceeds of the fund belonging to such township or district shall be adequate to the permanent maintenance and support of schools within the same: *Provided,* That the Legislatures aforesaid shall, in no case, invest the proceeds of the sale of the lands in any township in the manner aforesaid, without the consent of the inhabitants of said township or district, to be obtained as aforesaid.

"Sec. 4. *And be it further enacted,* That any sale of such lands, reserved as aforesaid, as have been made in pursuance of any of the laws enacted by the Legislatures of said States, and not inconsistent with the principles of this Act, are hereby ratified and confirmed so far as the assent of the United States to the same may be necessary to the confirmation thereof."

By chapter 79, Acts of 1884, Congress amended the foregoing act by providing that the legislature of Tennessee might lease said lands "for any term of years they may think proper, in such manner as to render them productive and most conducive to the object for which they are designed."

The legislature, by chapter 44, Acts of 1889, provided for the election of Township School Commissioners, and authorized the leasing of school lands "for mining purposes for a term of not more than twenty-five years," provided the proposition to lease should be ratified by the voters in the district.

By the foregoing act the legislature limited the term for which these lands might be leased, and also provided for a ratification of the lease by the voters. It was not bound, however, to do either, as its authority in the premises was unlimited, and it could amend, modify, or repeal the foregoing act at any time it saw fit.

It is apparent that Congress in ceding these lands intended that one-sixth thereof should be devoted to education. The character, number, and location of schools within the district was left to the sound discretion of the legislature, and it was to sell or lease these lands in such manner as would render them "most conducive to the object for which they are designed." Tennessee had no organized school system prior to 1867. It was thought that these lands were valuable only for agricultural purposes, and it was anticipated that only a small sum, comparatively speaking, would be realized from their sale; and that if leased the income would not be large. It has developed that this tract of land contains valuable mineral deposits, so that the School Commissioners were enabled to lease same in 1916 for a period of twenty-five years at an annual rental of $10,000, and in 1929 this lease was extended to 1948, with the privilege of renewing it for another twenty-five years at the same rental. Thus far the lessee has not begun mining operations, but has paid its rental promptly, and the fund now on hand from said rental exceeds $160,000. According to the allegations of

the bill, the School Commissioners propose to expend $150,000 of this fund in constructing a school building in said district. This is a case where a school district, like an individual becoming suddenly endowed with wealth, does not know what to do with its money, and quite naturally the beneficiaries differ as to the use to which it should be put. Under the authority of Congress, the legislature of Tennessee is the final arbiter in the matter, and its decision is binding on the court. It has been the policy of the legislature in recent years to establish Junior Colleges in various sections of the State. We see no reason why it may not establish one in the Ocoee District, construct the building out of this fund, and maintain it out of the rentals. Such is the unrestricted authority conferred by the Act of Congress.

This brings us to the constitutional questions. By chapter 88, Private Acts of 1923, the legislature authorized a lease of these lands without submitting same to the voters for approval. As previously stated, it had a right to so provide. This Act is assailed as violative of the two-subject clause of the Constitution, article 2, section 17. We think complainants have waived this contention, because in their reply brief they say: ''The complainants and relators repeat that they are not attacking the legality of the lease of these school lands.'' So that, treating the lease as valid, the determinative question is, can the School Commissioners expend this fund for the construction and maintenance of a Junior College?

Chapter 897, Private Acts of 1929, is as follows:
''AN ACT directing the disbursement and expenditures of certain school funds belonging to the public schools in the fourth fractional township of Polk County

and providing a school commission for said township and for the election of their successors.

"SECTION 1. *Be it further enacted by the General Assembly of the State of Tennessee,* That after the passage of this Act the township School Commissioners for the fourth fractional township of Polk County shall be composed of Dr. L. E. Kimsey, —— Clonts and T. A. Mitchell, citizens and residents of said township and County, who shall hold their office until the first Monday in November, 1932, on which said date within the hours now specified for holding the County election, an election shall be held for their successors; and that an election for said township Commissioners shall be held on the first Monday in November, every four years thereafter. Citizens voting in said election shall have been a resident of said township for six months next preceding the date for holding said election and otherwise qualified as now required by law.

"SEC. 2. *Be it further enacted,* That any and all funds belonging to the fourth fractional township of Polk County received or held because of the lease of said property or sale of any timbers or other materials from said lands situate in the fourth fractional township, may be expended by said Commission for the erection and equipment of a Junior College Building within said township, the selection of the site for said building to be made by said Commissioners and approved by the State Superintendent of Education.

"SEC. 3. *Be it further enacted,* That said Commissioners named herein or its successors may use any or all additional funds now on hand for the support of the said Junior College herein provided for, and may use the moneys received from the lease of said property the sum

of $10,000 annually for the support and maintenance of such institution.

"SEC. 4. *Be it further enacted,* That all laws and parts of laws in conflict with this Act be and the same are hereby repealed and that this Act take effect from and after its passage, the public welfare requiring it."

It is said that the Act is broader than the caption. To this we cannot agree. Every provision of the Act can be related to the caption, and is not, within the meaning of the constitution, foreign thereto or incongruous therewith. *Kizer* v. *State,* 140 Tenn., 583; *Wilson* v. *State,* 143 Tenn., 55; *Scott* v. *Nashville Bridge Co.,* 143 Tenn., 86; *Wright* v. *Donaldson,* 144 Tenn., 255.

It was insisted below that the Act violates article 7, section 5, of the Constitution, requiring that elections for civil officers shall be held on a specified date. It is now conceded that this contention was decided adversely to complainants in *State* v. *Ritzius,* 164 Tenn., 259, 47 S. W. (2d) 558.

Finally, it is said that chapter 104, Private Acts of 1931, is invalid because it violates the two-subject clause of the constitution. This Act is, in substance, a reenactment of the 1929 Act, so amended as to name other Commissioners and change their term of office. If the body of the former act is germane to the title, so is the latter. It is not necessary for the title of an amendatory act to set out the amendments proposed to be made if such amendments fall within the title of the original act.

But counsel invoke an exception to this rule of construction, approved by this court in *Hays* v. *Federal Chemical Co.,* 151 Tenn., 169, 175, as follows: "Where the title of the amendatory act recites the title of the act to be amended and also specifies the amendments to be

made, the legislature is limited to the amendments specified and anything outside of these is void.''

In approving this rule, the Court said: ''Any other rule would be unsafe. If the title of an amending act merely indicates generally that amendments of the original act are to be made, then it rests upon all those affected by the original act to investigate, and see in what respects the original act is to be changed. If the title of the amending act, on the contrary, sets out the particular amendments that are to be made to the original act, it may be reasonably concluded that no amendments other than those stated are to be attempted. It would promote deception, if, under a caption undertaking to specify amendments to be made, other and different amendments were included in the body of the act.''

The caption of the 1931 Act is as follows:

''AN ACT to amend an Act, same being Chapter 897, House Bill No. 1451, Private Acts of 1929, entitled, 'An Act directing the disbursement and expenditures of certain school funds belonging to the public schools in the fourth fractional township of Polk County and providing a school commission for said township and for the election of their successors,' and to provide that Sections One (1), Two (2), and Three (3) of said Act be amended by striking out said entire Sections One (1), Two (2), and Three (3), and inserting in lieu thereof as follows:''

The caption does not specify the amendments to be made and is not therefore misleading, and that part beyond the recital of the caption of the 1929 Act will be treated as surplusage and disregarded. *Nichols & Shepard Co.* v. *Loyd,* 111 Tenn., 145; *State ex rel.* v. *City of Nashville,* 141 Tenn., 409; *Goetz* v. *Smith,* 152 Tenn., 458; *Brown* v. *Hows,* 163 Tenn., 138. While the caption is in-

artificial, every intendment must be resolved in favor of its validity, and it does not fall within the rule approved in *Hays* v. *Federal Chemical Co., supra.*

■ Error is also assigned upon the action of the Chancellor in holding that the legislature may appoint agents to manage these lands and expend the funds realized from rentals. The legislature can act in no other manner, and such right is inherent and well sustained by authority. *Leeper* v. *State,* 103 Tenn., 500; *Richardson* v. *Young,* 122 Tenn., 471.

■ It is also said that the proceeding is one for the protection of this school fund and its preservation as a public trust, and that the Chancellor should have decreed costs and attorneys' fees to complainants. Counsel refer the court to Gibson's Suits in Chancery (Chambliss ed.), section 1179, which provides as follows: "Where the parties are *sui juris,* the Court ordinarily declines to do more in reference to fees than, on application of the Solicitor, to declare a lien in his favor upon the recovery obtained by his client in the cause. But where the complainant is an executor, administrator, guardian, or other trustee, and where the bill is to wind up an insolvent estate, or insolvent corporation, or is a general creditors' bill, or a bill in the nature of a general creditors' bill, or a bill by an executor, or other trustee, for the construction of a will or other trust instrument, the Court will, as a rule, on the application of the complainant, fix and decree the amount reasonably due his Solicitor for his services in the cause; and will order it to be paid out of the general or trust fund."

We are unable to see how complainants fall within either of the enumerated classes. The complainant beneficiaries simply seek to enjoin the agents of the trustee

from appropriating this fund in an alleged illegal manner, but the court held that they were acting legally. It results that complainants instituted an unnecessary and unjustifiable proceeding which has resulted only in expense and trouble to the trustee. Complainants have produced no fund and have accomplished nothing that is of benefit to the trust; hence under well settled principles of law they are entitled to no compensation out of the fund on hand.

The policy of this venture may be an unwise one, but the appeal of those who so consider it should have been made to the legislature, who is empowered to act, and not to the court, who is without such power.

Upon a petition to rehear, the Chancellor modified his decree dismissing the bill so as to retain the cause for purposes not in question upon this appeal. Being of the opinion that there is no error in the decree of the Chancellor, it follows that it will be affirmed, and the cause remanded to be further proceeded with.

Complainants will pay the cost of the appeal.