TENNESSEE ELECTRIC POWER CO. *v.* CITY OF CHATTANOOGA
*et al.*

(*Knoxville*, September Term, 1936.)

Opinion filed March 27, 1937.[1]

---

[1]Designated for Publication March 18, 1938.

506

BROWN & SPURLOCK, L. N. SPEARS, and FRAZIER & ROBERTS, all of Chattanooga, and THOMAS H. MALONE and TRABUE, HUME & ARMISTEAD, all of Nashville, for appellant.

PHIL B. WHITAKER, WILL F. CHAMLEE, and J. W. ANDERSON, all of Chattanooga, for appellees.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

Complainant, Tennessee Electric Power Company, as a taxpayer and as the holder of a nonexclusive franchise, seeks by its bill herein to enjoin the City of Chattanooga, and the other named defendants, from constructing a municipal electric plant and distribution system, and from issuing the bonds of the municipality for such purpose.

The cause was heard by the chancellor upon the application of complainant for a temporary injunction, as prayed in its bill, and the answer of defendants. From the decree denying the injunction and dismissing the bill complainant has appealed to this court and assigned errors.

It is insisted by complainant that chapter 455, Private Acts 1935, is unconstitutional and void for a number of reasons. It is under the authority of this act that the City of Chattanooga is preparing to issue its bonds for the construction of a municipal electric plant and distribution system.

It is insisted that the act here in question is unconstitutional in vesting in the Electric Power Board the sole determination as to whether the bonds shall be issued, and whether a tax shall be levied for their pay-

ment, in violation of article 2, section 29, of the Constitution of the State of Tennessee, which, in its material parts, is as follows:

"The General Assembly shall have power to authorize the several counties and incorporated towns in this State, to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law."

The act, section 7, creates a board to be known as the "Electric Power Board of Chattanooga," composed of five members named in the act for fixed terms of office. The board is given the right to name their successors, subject, however, to confirmation by the Mayor and Board of Commissioners of the City of Chattanooga.

Section 2 of the act authorizes the city to construct or otherwise acquire and operate an electric power plant and distribution system and to sell electric current for any purpose whatever, within the corporate limits of the city and the territory adjacent thereto. Section 3 authorizes the city to issue and sell its bonds in an amount not exceeding $8,000,000 for the purpose of financing the undertaking. The first part of section 4 of the act provides for the denominations of the bonds; that the bonds shall be serial, maturing in such amounts and at such times not less than three nor more than thirty years from date of issuance as the Board of Commissioners may determine, and shall bear interest at the rate of not more than 6 per cent. per annum. It is further provided in section 4 as follows:

"Said bonds shall be issued from time to time in such amounts, and shall bear dates, as the Electric Power Board hereinafter created shall direct; and it shall be the duty of the Mayor and Board of Commissioners of

the City to provide by resolution or ordinance for the issuance of said bonds as directed by said Electric Power er Board. Said bonds shall be known as Electric Power Bonds of the City of Chattanooga and they may be issued either as direct and general obligations of the city, payable out of its general income and revenue, or at the election and subject to the determination of said Power Board they may be made payable only out of the revenue from said power plant and distribution system. In case the bonds are issued as general obligations of the City, it shall be the duty of the governing board of said City to levy a tax each year over and above the taxes levied for general municipal purposes, to pay the interest and principal of said bonds as they mature."

The Power Board, under the act, is given full control over the erection, maintenance, and operation of the power plant and distribution system, and the collection of all revenues arising from the operation thereof. The Power Board, thus informed of the needs and requirements of the power plant and distribution system, would be in a position to know whether or not its financial status would justify the issuance of bonds payable out of revenues derived from the operation of the plant. The act, therefore, provides, as appears above, that "at the election and subject to the determination of said Power Board they [the bonds] may be made payable only out of the revenue from said power plant and distribution system." The city "may" make the bonds so payable, but is put under no compulsion to do so. The authority of the city to issue its general liability bonds is unimpaired by the provision that at the election of the Power Board bonds may be issued by the city payable out of the revenues of the power plant.

The power to make the bonds payable out of the revenues of the electric plant is, in effect, made dependent on the ability of the plant to stand the charge. The determination of the Power Board that the bonds may be made so payable amounts to nothing more than the finding of a fact.

The authority to issue and sell the bonds authorized by the act is conferred exclusively upon the City of Chattanooga and not upon the Power Board. The city is authorized, but not compelled, to build or buy a power plant. If it elects to do so, "it is hereby authorized, in its corporate capacity, to issue and sell its bonds . . . in an amount not exceeding Eight Million ($8,-000,000.00) Dollars." Section 3. The Board of Commissioners of the city determines the maturity of the bonds and the rate of interest they shall bear. To avoid the harm that might arise from the issuance and sale of bonds in excess of the financial needs of the Power Board, the act provides: "Said bonds shall be issued from time to time in such amounts, and shall bear dates, as the Electric Power Board hereinafter created shall direct." Section 4. The legislative intent was that bonds should be issued and sold as and when needed by the Power Board in the performance of its work. When the need is determined by the Power Board, it is then the duty of the city to issue the amount of bonds requested by the board.

The act does not, as is asserted, vest in the Power Board the sole determination as to whether the bonds shall be issued. On the contrary, this power is vested by the act in the City of Chattanooga. The fact that the bonds are to be issued in installments, or blocks, as directed by the Power Board, cannot be construed as con-

ferring upon it the sole determination as to whether the bonds shall be issued. Having conferred the sole power to determine whether the bonds shall be issued on the city, in plain and unmistakable terms, it cannot be supposed that the Legislature intended by the clause last above quoted to confer this right upon the Power Board. A construction will be avoided, if possible, that would render one section of the act repugnant to another. *Wilcox* v. *State*, 50 Tenn. (3 Heisk.), 110. Or one that would produce an absurd result. *West* v. *State*, 140 Tenn., 358, 204 S. W., 994.

■ ■ It is contended that the act confers upon the Power Board the authority to levy a tax. The provision in the act is: "In case the bonds are issued as general obligations of the City, it shall be the duty of the governing board of said City to levy a tax, . . . to pay the interest and principal of said bonds." Nowhere in the act is authority conferred upon the Power Board to levy a tax. It is argued, however, that the fact the bonds are to be issued, from time to time, by the city, as directed by the Power Board, compels the levy of a tax. The case of *Mayor and City Council of Nashville* v. *Hagan*, 68 Tenn. (9 Baxt.), 495, is relied on. In that case the waterworks committee of the City of Nashville, without power to make a contract for a new and expensive improvement, undertook to bind the city for payment of the same. The court said:

"The power to make such a contract, being equivalent in general to the power to levy and disburse taxes, must be exercised in the same manner and by the same authority, that is, by a corporate act. The city government may, by general laws and ordinances, modify this

rule and give to the committees power to make contracts in some instances.''

The ordinance proved on the trial, however, permitted the waterworks committee to make only necessary expenditures in case of emergency. The court held, therefore, that the committee was without power to make the contract. In the instant cause the Power Board, by express legislative authority, is empowered to make all contracts necessary to the construction of the power plant, and the city is expressly authorized to issue its bonds for the payment of the cost of the same. Had the committee in the *Hagan Case, supra,* had the proper legal authority to contract for the new improvement, a different result would have been reached in the case. Under the act here in question, we do not think that because the bonds are to be issued by the city, from time to time, as directed by the Power Board, the board thereby determines that a tax shall be levied. The city, under the act, is empowered to construct or acquire a power plant. The Power Board is the mere agency of the city in the construction or acquisition of the plant. It is the cost of performance that makes necessary the issuance of bonds. In directing bonds to be issued, from time to time, the board is but drawing on the city for money to defray the cost of performance. The fact that the city is under the necessity of borrowing the money, needed by the board, by a sale of the city's bonds, which must be repaid out of tax levy, cannot, we think, be held a tax levied by the board.

It is insisted that the act violates article 1, section 8, of the Constitution, in that it vests in the Power Board the right to tax. As hereinbefore found, no such power is conferred on the Power Board.

It is our conclusion that the act in question does not violate either article 2, section 29, or article 1, section 8, of the Constitution.

■ It is next contended that the act is unconstitutional in vesting in the Power Board the sole authority to fix rates to be paid by citizens for electric current.

The Legislature has the power to fix rates to be charged by a public utility. It may delegate this power to a municipality. *Knoxville* v. *Knoxville Water Co.*, 107 Tenn., 647, 64 S. W., 1075, 61 L. R. A., 888. Or to a commission. *City of Memphis* v. *Enloe*, 141 Tenn., 618, 214 S. W., 71, where the act creating the Railroad and Public Utilities Commission was held constitutional.

■ We know of no constitutional provision which prohibits the Legislature from creating a subsidiary board for a municipality and clothing it with power to fix the rates to be made for electric current furnished by the municipality to its inhabitants. The Power Board, in the instant cause, is but the creature of the Legislature and may be abolished by it at any time. In *Lewis* v. *Nashville Gas & Heating Co.*, 162 Tenn., 268, 40 S. W. (2d), 409, it was said that the regulation of rates, however accomplished, is subject to the continuing police power of the state which, in the exercise of its discretion, can cancel the conditions that have permitted the municipality to prescribe the rates.

■ It is objected that the act undertakes to give to individuals not chosen by the people, and who are not the legislative body of the municipality, the power to fix rates. The Legislature, itself, named the individuals composing the first board, for definite terms, and provided that all vacancies should be filled on nomination by the remaining members of the board, subject to con-

firmation by the Board of Commissioners of the city. The method adopted by the Legislature for the appointment and perpetuation of the board is not violative of article 7, section 4, of the Constitution. *Richardson* v. *Young*, 122 Tenn., 471, 125 S. W., 664. Members of the board are made subject to removal from office, for causes mentioned in the act, by ouster proceedings.

■ It is next insisted that the act is unconstitutional because the title is deceptive and violative of article 2, section 17, of the Constitution.

The caption of the act is as follows:

"An Act to amend the Charter of the City of Chattanooga, Tennessee, and all Acts heretofore passed amendatory thereof, so as to authorize and empower said city to purchase, construct, lease or otherwise acquire, and to maintain, operate and regulate, and (an*) electric light and power plant, electric distribution system and substations and all necessary and suitable equipment, appliances and appurtenances thereto, for the purpose off developing, transmitting, distributing and utilizing electric energy for any and all purposes; to provide for the creation and organization of a Board to exercise the powers and authorities so granted and to prescribe the duties, powers and methods of procedure of such Board; to authorize the issuance and sale of bonds of said city and the borrowing of money for the purpose of carrying out and exercising the powers granted; and to authorize the said city to make all such contracts as may be deemed necessary or appropriate to obtain, utilize and furnish electric currents as authorized by the Act."

The contention is that the caption is restrictive, purporting to amend the charter of the City of Chattanooga

in certain definite respects, while amendments are found in the body of the act not specified in the caption.

Article 2, section 17, of the Constitution is, in part, as follows:

"No bill shall become a law, which embraces more than one subject; that subject to be expressed in the title. All acts which repeal, revive or amend former laws, shall recite in their caption or otherwise, the title or substance of the law repealed, revived or amended."

A statute reciting the title or substance of a former law and expressly purporting to amend same need not indicate the particular and specific character of the amendment, if the amendment is germane to and embraced in the subject expressed in the original act. *Armstrong* v. *City of South Fulton,* 169 Tenn., 54, 82 S. W. (2d), 862; *Henderson Co.* v. *Breeden Bros.,* 148 Tenn., 278, 255 S. W., 359; *Jackson* v. *Manufacturing Co.,* 124 Tenn., 421, 137 S. W., 757. However, where the title of the amendatory act recites the title of the act to be amended and also specifies the amendments to be made, the legislation is thereby limited to the amendments specified and anything in the body of the act outside of these is void. *Hays* v. *Federal Chemical Co.,* 151 Tenn., 169, 268 S. W., 883; *Dalton* v. *Kimsey,* 165 Tenn., 116, 52 S. W. (2d), 465.

The caption of the act here in question specifies four amendments to the charter of the City of Chattanooga. All matters which are naturally and reasonably connected with the subjects of the amendments expressed in the caption may properly be included in the body of the act, though not recited or stated in the caption. *Wright* v. *Donaldson,* 144 Tenn., 255, 230 S. W., 605. In *Couch* v. *State,* 140 Tenn., 156, 203 S. W., 831,

518

it was held that the general subject expressed in the title of the statute justifies provisions in the body of the act as to the manner, means, and instrumentalities whereby the statute may be enforced, or administered, or its purposes accomplished. A liberal interpretation will be adopted in upholding amendatory acts where the body and caption of the act, taken as a whole, and from a practical viewpoint, indicate the legislation sought to be effected. *Greenwood* v. *Rickman,* 145 Tenn., 361, 235 S. W., 425; *Caruthers* v. *Lake County Mfg. Co.,* 150 Tenn., 269, 263 S. W., 793.

The question of whether or not the several provisions of an act are germane to the subject expressed in the title is largely one of fact, and the constitutionality of an act under investigation is to be determined by applying the settled rules of construction and the court's own knowledge of affairs. *Frazier* v. *Railway Co.,* 88 Tenn., 138, 12 S. W., 537; *Samuelson* v. *State,* 116 Tenn., 470, 95 S. W., 1012, 115 Am. St. Rep., 805.

It is insisted that the following amendments found in the body of the act are not among those specified in the caption:

(a) "The right given to the Power Board by section 11 of the Act 'to agree on rates for the sale of such current.'" Every provision found in the body of the act germane to the subject of the amendments specifically set forth in the caption are embraced therein. The authority conferred upon the city to construct, acquire, maintain, and operate an electric light and power plant, for the purpose of distributing and "utilizing electric energy for any and all purposes," specified in the caption, carries with it the right to sell such energy to private consumers. The right to sell implies the

right to charge. In *Smith* v. *Nashville,* 88 Tenn., 464, 12 S. W., 924, 925, 7 L. R. A., 469, under a charter right "to provide the city with water by water-works," Acts 1883, chapter 114, section 17, subdivision 8, it was held that the city had the authority to furnish water to its inhabitants, and the right to exact a charge therefor was recognized. In *Keenan & Wade* v. *City of Trenton,* 130 Tenn., 71, 168 S. W., 1053, Ann. Cas., 1916B, 519, it was held that the express grant of power to a municipality to light streets carried, by implication, power to construct or acquire by purchase a lighting plant for that purpose and to furnish current for lights to private consumers.

Not only does the right to sell electric energy arise by implication from the broad powers conferred upon the city to construct and operate an electric power plant and distribute the energy for any and all purposes, specified in the caption, but the concluding clause of the caption must be taken into account. This clause reads: "and to authorize the said city to make all such contracts as may be deemed necessary or appropriate to obtain, utilize and furnish electric currents *as authorized by the Act.*" (Italics ours.)

The object of the rule forbidding the inclusion of any provision in the body of the act not covered by the specification contained in the caption is to prevent surprise or fraud upon the legislature. *Cannon* v. *Mathes,* 55 Tenn. (8 Heisk.), 504. Where, as in the above-quoted clause of the caption, the element of surprise or fraud is excluded, because notice was given that the power to make contracts and furnish electric currents was "as authorized by the Act," the rule has no application. In *State Board of Examiners* v. *Engineering*

*Co.*, 157 Tenn., 157, 162, 7 S. W. (2d), 47, the concluding clause of the caption of the act, Pub. Acts 1925, chapter 70, under investigation was ''and so as to make certain other alterations in the original Act,'' and this was held sufficient to take the caption from out of the rule announced in *Hays* v. *Federal Chemical Co., supra.* Here, the language of the caption makes direct reference to the body of the act as to the making of contracts and the furnishing of electric current. Our conclusion is that the power ''to agree on rates for the sale of such current,'' section 11, is within the scope of the caption to the act.

 (b) ''The right given the Power Board with respect to the issuance of bonds and the levy of a tax.'' The caption of the act specifies that the charter of the city is amended so as to provide ''for the creation and organization of a Board to exercise the powers and authorities so granted and to prescribe the duties, powers and methods of procedure of such Board.'' The charter of the city was further amended so as to ''authorize the issuance and sale of bonds of said city and the borrowing of money for the purpose of carrying out and exercising the powers granted.'' The levy of a tax is germane to the power granted to issue and sell bonds and borrow money. The levy of a tax to pay the principal and interest of the money borrowed is germane to the title. The rights given the Power Board with respect to the bonds are likewise within the title.

 (c) ''That the nature of the Power Board and its powers and functions are not fairly indicated in the caption.'' It is not necessary that the title of an act be made an index or epitome of the provisions embraced in the body of the act. *State ex rel.* v. *Schlitz Brewing Co.*, 104 Tenn., 715, 59 S. W., 1033, 78 Am. St. Rep., 941.

(d) "The right given to the Power Board to exercise the power of eminent domain is outside the caption." In any public improvement the right to eminent domain is essential. The provision in the act conferring upon the board the right to exercise the right of eminent domain in the name of the city is germane to the title. *Tennessee Coal, Iron & Railroad Co.* v. *Transportation Co.,* 128 Tenn., 277, 160 S. W., 522.

(e) "The provision repealing the limitation of the city's right to issue bonds or incur debt is not covered by the caption." The amendment to the charter of the city placing a limitation upon the amount of its total indebtedness merged and became part of the original act. In amending the charter, by the act here in question, it was unnecessary to mention specifically any prior amendatory act. *Goodbar* v. *Memphis,* 113 Tenn., 20, 81 S. W., 1061. When, therefore, the Legislature authorized the city to issue bonds for the construction or purchase of a power plant, to the amount of $8,000,000, the former limitation stood repealed by implication.

The act is further attacked on the ground that it attempts to loan the credit of the city to the Tennessee Valley Authority without the assent of three-fourths of the votes cast at an election declared and previously held, as required by article 2, section 29, of the Constitution. We find nothing in the act authorizing the city to lend its credit to any outside agency. The bonds authorized by the act are for the purpose of acquiring an electric power plant and distribution system for the city itself. The erection of such a plant and distribution system is a corporate purpose, and the bonds issued to raise money for the payment of the same is not

the lending of credit to another, therefore no submission of the matter to a vote of the people is required. *Imboden* v. *City of Bristol,* 132 Tenn., 562, 179 S. W., 147; *Armstrong* v. *City of South Fulton,* 169 Tenn., 54, 82 S. W. (2d), 862.

 It is insisted that the act in question is special legislation in violation of article 11, section 8, of the Constitution. In *Tennessee Public Service Co.* v. *City of Knoxville,* 170 Tenn., 40, 91 S. W. (2d), 566, 570, it appears that the city was granted the charter right to build, or purchase, and operate, electric light works and sell current to all persons desiring to purchase the same. The court said:

"For complainant TPS it is claimed this provision of the charter is obnoxious to the Constitution of the state, in that it is special legislation, and confers upon the city of Knoxville, in its proprietary capacity, rights not conferred upon other cities of the state.

"There is no constitutional inhibition against special legislation as to municipal corporations." (Citing authorities)

In *Williams* v. *Taxing District,* 84 Tenn. (16 Lea), 531, at pages 537, 538, the court said:

"It is next insisted that the act under consideration is obnoxious to the provision of the Constitution, Article 11, section 8, which forbids the Legislature 'to pass any law granting to any individual or individuals rights, privileges, immunities or exemptions other than such as may be, by the same law, extended to any member of the community who may be able to bring himself within the provisions of such law.' But the cases cited by the learned counsel, in his argument in support of this contention, are cases of partial laws, which were held to be

violative of Article 1, section 8 of the Constitution. And it is very true that a provision of a municipal charter, which undertakes to make a law for, or in regard to, that municipality different from the general law, or to withdraw from the operation of a general law, applicable to all municipal corporations, a particular corporation, or class of such corporations, would be obnoxious to the clause of the Constitution last cited, because not the law of the land: *Mayor of Alexandria* v. *Dearmon,* 34 Tenn. (2 Sneed), 104; *Hatcher* v. *State,* 80 Tenn. (12 Lea), 368. But the particular franchises or rights granted to municipal corporations have never been held to fall within the prohibitions of article 11, section 8. For such franchises are extended to any member of the community who may become a member of the corporation. And, besides, such a construction of that provision of the Constitution would deprive the Legislature of the power to make exceptional provisions for particular municipalities, or classes of municipalities.''

The act here in question does not undertake to make a law for the City of Chattanooga different from any general law, or to withdraw it from the operation of a general law.

After a careful consideration of the questions made, we are constrained to overrule all of the assignments of error and affirm the decree of the chancellor. Complainant will pay the costs of the appeal.