IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 15, 2015

**STATE OF TENNESSEE v. MARIO D. FREDERICK**

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 41400160    Michael R. Jones, Judge**

**No. M2014-01653-CCA-R3-CD – Filed October 12, 2015**

A Montgomery County Circuit Court Jury convicted the appellant, Mario D. Frederick, of indecent exposure and public indecency, Class B misdemeanors, and the trial court sentenced him to ninety days for each conviction to be served concurrently. On appeal, the appellant contends that the evidence is insufficient to support the convictions and that the trial court improperly instructed the jury on the definition of "masturbation." Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Jacob W. Fendley, Clarksville, Tennessee, for the appellant, Mario D. Frederick.

Herbert H. Slatery III, Attorney General and Reporter; Leslie E. Price, Senior Counsel; John Wesley Carney, Jr., District Attorney General; and Robert J. Nash, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

At trial, Larity Roberts, Jr., testified that he was the Loss Prevention Manager for Sears, that his duties included theft prevention and internal investigations, and that he operated security video and monitored security cameras "live" in a room in the back of the store. On December 29, 2013, Roberts was in the camera room and observed the appellant come into the store from the mall entrance. The appellant was carrying a large

bag. Roberts said that the merchandise in the bag "didn't fit the size of the bag," which alerted him to start watching the appellant.

Roberts testified that he saw the appellant "fondling" himself. The appellant's penis was outside of his clothing, and he was "actually placing his hand down and pulling his private parts out and actually rubbing." The State asked if Roberts was offended by the appellant's actions, and Roberts answered, "Yes, sir. Well, I really was kind of surprised [about] what happened, because the store was full of personnel, and a couple of times a female had passed by and everything but he continued to do what he was doing." Roberts said that he left the camera room because the appellant acted like he was going to leave the store. Instead of leaving, though, the appellant stopped at the door, which gave Roberts an opportunity to confront him. Roberts identified himself to the appellant, took the appellant to his office, and called the Clarksville Police Department. Roberts identified a video recording of the appellant's actions, and the State played the video for the jury.

On cross-examination, Roberts acknowledged that he had been taught to watch for "alert signals" or behaviors that indicated shoplifting. He acknowledged that two of the signals were "looking around and making sure nobody's watching him." He agreed that he "noticed those two behaviors" by the appellant. He also acknowledged that he only saw the appellant expose himself on camera. The appellant was cooperative and did not steal anything.

The appellant testified that on December 29, 2013, he was shopping for after-Chrismas sales at the mall and went into the "women's section" of Sears to shop for his mother. The appellant had just come from exercising and was wearing sweatpants. He stated that he had a "clothing malfunction," that he was "making adjustments," and that he was looking around to make sure nobody was around him.

The appellant testified that the drawstring on his sweatpants was broken and that "that's why you see me in the video pulling my pants up." The appellant explained that his gentials were hanging out of the hole in his boxer shorts and that he was "kind of like scratching, looking around, and then I got myself together." The appellant denied that he was masturbating and said that he was "just scratching." The appellant said that he thought he did a good job of concealing himself and that "as seen in the video, you will see there were other customers in the vicinity of where I was at certain points in time." He said that if he had intended for someone to see him, "it would be pretty easy" and that the only reason Roberts saw him was due to the video cameras. The appellant never lifted his shirt to expose his penis and did not have an erection. He stated that he had a daughter, a mother, and several nieces and that he would not want anyone to expose him- or herself to his family. He said any exposure was accidental.

On cross-examination, the appellant testified that the drawstring on his pants broke just before he got to the mall and that his pants would stay up briefly but then start falling down. He said he did not go into a bathroom or a fitting room because he "just wasn't thinking" and "it was just a spur [of the] moment . . . thing." He stated that he "fixed the situation there" and concealed himself. He did not know Roberts was watching him.

At the conclusion of the appellant's testimony, the jury convicted him as charged of indecent exposure and public indecency, Class B misdemeanors. After a sentencing hearing, the trial court sentenced him to ninety days for each conviction to be served concurrently.

## II. Analysis

### A. Definition of Masturbation

The appellant contends that the trial court improperly instructed the jury on the definition of "masturbation." The State argues that the trial court properly instructed the jury. We agree with the State.

During its deliberations, the jury submitted a question to the trial court, asking for the definition of "masturbation." The trial court advised the parties that it was going to instruct the jury as follows:

> Masturbation is a sexual act involving the selfsexual stimulation of the genitals for sexual arousal or other sexual pleasure, usually to the point of orgasm. The stimulation can be performed by using a hand or fingers.

The court asked if the parties had any objections, and defense counsel asked if the court could "leave out fingers on that." The trial court answered that the definition was "going to stay the way it is." The jury entered the courtroom, and the court instructed the jury.

"It is well settled that a defendant has a constitutional right to a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." State v. Dorantes, 331 S.W.3d 370, 390 (Tenn. 2011). This court "must review the entire [jury] charge and only invalidate it if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law." State Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995).

"A trial court has the authority to respond to jury questions with a supplemental instruction." Id. at 451. Further, "[i]t is appropriate for the jury to be provided with dictionary definitions of words or terms not in common use and not understood by persons of reasonable intelligence." State v. Bowers, 77 S.W.3d 776, 790 (Tenn. Crim.

App. 2001). In our view, it was appropriate for the trial court to define "masturbation" for the jury. A charge results in prejudicial error only when it fails to fairly submit the legal issues to the jury or misleads the jury about the applicable law. State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997). "Whether jury instructions are sufficient is a question of law appellate courts review de novo with no presumption of correctness." State v. Clark, 452 S.W.3d 268, 295 (Tenn. 2014).

The appellant contends that the legislature clearly recognized a difference between "fondling" and "masturbation" but that the definition of "masturbation" given by the trial court made very little distinction between the two. See Tenn. Code Ann. § 39-13-517(b)(1), (2) (defining public indecency, in pertinent part, as intentionally or knowingly engaging in masturbation or fondling the genitals in a public place). He claims that the touching of one's genitals without the intent to reach orgasm is fondling, not masturbation. We disagree.

Initially, we note that the appellant objected to the definition's inclusion of the use of one's fingers to perform masturbation; he did not object to the definition's failure to state that masturbation required the intent to reach orgasm. See Tenn. R. App. P. 36(a). In any event, Merriam-Webster's Dictionary defines "masturbation" as "erotic stimulation especially of one's own genital organs commonly resulting in orgasm and achieved by manual or other bodily contact exclusive of sexual intercourse, by instrumental manipulation, occasionally by sexual fantasies, or by various combinations of these agencies." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/masturbation (last visited Sept. 4, 2015). Other definitions of "masturbation" do not even mention "orgasm." For example, Oxford Dictionaries defines "masturbation" simply as "[s]timulation of the genitals with the hand for sexual pleasure." Oxford Dictionaries Online, http://www.oxforddictionaries.com/us/definition/american_english/masturbation (last visited Sept. 28, 2015). Cambridge Dictionaries defines "masturbate" as "to touch or rub your sexual organs in order to give yourself pleasure." Cambridge Dictionaries Online, http://dictionary.cambridge.org/dictionary/english/masturbate?q=masturbation (last visited Sept. 28, 2015).

The appellant has cited to no definition of "masturbation," and we have found none, that requires an intent to reach orgasm. The definition provided by the trial court was very similar to the Merriam-Webster definition. It did not mislead the jury as to the applicable law, nor did it fail to fairly submit the legal issue. Therefore, the trial court's supplemental instruction was not erroneous.

## B. Sufficiency of the Evidence

The appellant contends that the evidence is insufficient to support his indecent exposure conviction because the evidence fails to show that he was masturbating and

because "it is clear from the evidence he had no intention of showing anyone his genitals." Although the appellant does not raise any sufficiency claim regarding his public indecency conviction, masturbation is an element of that offense. Therefore, we will also consider whether the evidence is sufficient to support that conviction. We conclude that the evidence is sufficient to support both convictions.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable v. State, 203 Tenn. 440, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

Relevant to this case, indecent exposure occurs when a person, in a public place, intentionally exposes his or her genitals to another and reasonably expects that the acts will be viewed by another and the acts will offend the ordinary viewer. Tenn. Code Ann. § 39-13-511(a)(1)(A)(i)(a), (ii)(a). A "public place" is generally defined as "a place to which the public or a group of persons has access." Tenn. Code Ann. § 39-11-106(a)(29). A person commits public indecency when, in a public place, the person intentionally or knowingly engages in masturbation. Tenn. Code Ann. § 39-13-517(b)(1). A "public place" for purposes of the public indecency statute "means any location frequented by the public, or where the public is present or likely to be present, or

where a person may reasonably be expected to be observed by members of the public." Tenn. Code Ann. § 39-13-517(a)(2)(A)(i).

Regarding the appellant's claim that the evidence is insufficient to support his indecent exposure conviction because the proof fails to show he was masturbating, count one of the indictment alleged that the appellant "unlawfully in a public place, Sears Department Store, did intentionally expose his genitals to another during the act of masturbation, and reasonably expects that the acts will be viewed by another, and the acts will offend the ordinary viewer[.]" However, the State was not required to show that the appellant engaged in masturbation in order to prove indecent exposure. Therefore, the language "during the act of masturbation" was mere surplusage and did not add to the State's burden of proof at trial. See State v. Irick, 762 S.W.2d 121, 128-129 (Tenn. 1988).

However, masturbation is an element of the offense for public indecency. As stated previously, the trial court defined masturbation for the jury as "a sexual act involving the selfsexual stimulation of the genitals for sexual arousal or other sexual pleasure, usually to the point of orgasm. The stimulation can be performed by using a hand or fingers." We have reviewed the video shown to the jury. The video shows the appellant walking through the store, looking around, and repeatedly grabbing his genital area. At the end of the video, the appellant can be seen with his penis hanging out of the top of his pants. The appellant is holding his penis with his left hand and stroking it with his left thumb. This evidence clearly satisfies the definition of masturbation. Thus, the evidence is sufficient to support his public indecency conviction.

The appellant also claims that the evidence is insufficient to support his indecent exposure conviction because "[t]he undisputed testimony is that [he] was taking steps to avoid being seen," and, therefore, the State failed to prove that he intended to show his genitals to anyone. We disagree. The video shows the appellant moving around the women's shoe department, grabbing his groin over his pants, and frequently turning his head to look around him. At times, women are very near him, but none of them react or appear to notice what he is doing. Although the appellant claims that he was trying to avoid being seen, the jury just as easily could have concluded that he was moving through the store in order to attract someone's attention and was looking around him to see if he had succeeded. We note that while the appellant was masturbating, a woman walked into the area and looked at shoes nearby. As soon as she left the area, the appellant put his penis back into his pants and walked in her direction. Thus, the evidence is sufficient to show that the appellant intended to expose his penis to another. The appellant's exposure did not need to be directed at any specific person and the fact that Roberts happened see him from the camera room instead of a female from the aisles of the store is of no consequence.

Even assuming arguendo that the appellant was trying to avoid being seen, the evidence still would be sufficient. As our supreme court has explained,

> When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. In re C.K.G., 173 S.W.3d 714, 722 (Tenn. 2005). When a statue is clear, we apply the plain meaning without complicating the task. Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. Abels ex rel. Hunt v. Genie Indus., Inc., 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. Parks v. Tenn. Mun. League Risk Mgmt. Pool, 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." Marsh v. Henderson, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. Tenn. Elec. Power Co. v. City of Chattanooga, 114 S.W.2d 441, 444 (1937).

In Re Estate of Tanner, 295 S.W.3d 610, 613-14 (Tenn. 2009).

In order to commit indecent exposure, a defendant first must be in a public place. The appellant acknowledges that this element has been satisfied. Next, the defendant must intentionally expose his or her genitals to another. "Expose" means "to cause to be visible or open to view." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/expose (last visited Sept. 28, 2015). Thus, the defendant has to intentionally, as opposed to accidentally, cause his or her genitals to be visible or open to view to another. Taken in the light most favorable to the State, the evidence shows that the appellant intentionally pulled his penis out of the top of his pants. The next element requires that a defendant reasonably expect that the act will be viewed by another. A defendant standing in the women's shoe department of Sears with his penis in his hand can reasonably expect to be seen by another, including personnel monitoring the store's security cameras. Likewise, such defendant can reasonably expect that the act will

offend an ordinary viewer, which is the final element of the offense.  Roberts testified that he was offended.  Therefore, even if the appellant did not intend for another to see his actions, the evidence is sufficient to support his indecent exposure conviction.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.


_____
NORMA MCGEE OGLE, JUDGE