FILED
05/11/2021
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 28, 2021 Session

## CLARKSVILLE TOWERS, LLC v. JOHN STRAUSSBERGER ET AL.

**Appeal from the Chancery Court for Montgomery County**
**No. CD18-12          Laurence M. McMillan, Jr., Chancellor**

_____

### No. M2020-00756-COA-R3-CV

_____

This appeal concerns the potential personal liability of the owner of a corporation, which was engaged as the contractor in a multi-million-dollar construction project. The trial court granted summary judgment in favor of the construction company's owner, determining that the owner could not be held personally liable for the corporation's alleged violations of either the Tennessee Contractors Licensing Act, the Tennessee Consumer Protection Act, the Tennessee Trust Fund Statute, or the Prompt Pay Act. The plaintiff has appealed. Upon our *de novo* review, we affirm the grant of summary judgment to the corporation's owner.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

Todd E. Panther and Eric G. Osborne, Nashville, Tennessee, for the appellant, Clarksville Towers, LLC.

William H. Horton and Carol M. Ballard, Chattanooga, Tennessee, for the appellee, John Straussberger.

### OPINION

#### I. Factual and Procedural Background

In July 2017, Clarksville Towers, LLC ("Clarksville Towers"), entered into a contract with The Strauss Company, Inc. ("Strauss"), concerning the construction of a dormitory building on Main Street in Clarksville, Tennessee. At the time the contract was executed, Strauss held a valid contractor's license issued by the State of Tennessee, but

Strauss's license expired on March 31, 2018, before construction was completed. Clarksville Towers learned of the expiration of Strauss's license on April 5, 2018, and provided written notice six days later of its intent to terminate the contract due to Strauss's failure to maintain proper licensure. Following a lack of response from Strauss, Clarksville Towers terminated the contract on April 18, 2018.

Nine days later, on April 27, 2018, Clarksville Towers filed a complaint in the Montgomery County Chancery Court ("trial court"), naming John Straussberger and Strauss as defendants. In its complaint, Clarksville Towers alleged that Mr. Straussberger was the president of Strauss and "oversaw and directed all activities of [Strauss] relating to the Project." Clarksville Towers asserted that it had performed an accounting concerning the project following termination of the contract and discovered that Strauss had allegedly invoiced Clarksville Towers for $971,358.34 in payments that had not been passed along to subcontractors. Clarksville Towers asserted claims against both defendants for breach of contract, violation of the Tennessee Contractors Licensing Act, and violation of the Tennessee Consumer Protection Act ("TCPA"). Clarksville Towers sought an award of compensatory damages, treble damages, and attorney's fees, as well as entry of a restraining order and a temporary injunction prohibiting Strauss from using the funds paid by Clarksville Towers for any purpose other than paying the respective subcontractors. Clarksville Towers subsequently filed a notice stating that it had received three notices of nonpayment and liens filed by various subcontractors who had worked on the project.

On May 1, 2018, the trial court entered a restraining order that enjoined "[t]he defendants . . . and their agents, servants, employees, attorneys . . . from using any portion of the $971,358.34 amount Clarksville Towers paid the Contractor . . . for any purpose other than to pay the subcontractors." On May 10, 2018, the trial court entered an agreed order, providing that the temporary restraining order entered in the matter would "continue as a Temporary Injunction until trial."

On May 29, 2018, Strauss filed an answer, denying that it had retained excess funds on the project. Although not pertinent to the issues on appeal, Strauss concomitantly filed a third-party complaint against Scott DeLano, a former Strauss project manager; The Bradley Projects, Inc. ("TBP"), the architect on the project; and Jared Bradley, a TBP employee. Strauss alleged that Mr. DeLano was liable for breach of fiduciary duty and that Mr. Bradley and TBP were liable for negligence.[1] Mr. Straussberger similarly filed an

---

[1] Mr. DeLano, Mr. Bradley, and TBP filed answers denying liability and/or motions to dismiss the claims asserted against them. Mr. Straussberger and Strauss then filed a motion seeking leave to file an amended third-party complaint against Mr. DeLano, Mr. Bradley, and TBP. The trial court entered an order on December 14, 2018, granting Mr. Straussberger's motion to amend but staying the motion filed by Strauss. Mr. Straussberger subsequently filed an amended third-party complaint. Mr. Bradley and TBP moved to dismiss Mr. Straussberger's amended third-party complaint on February 13, 2019, and Mr. DeLano filed a similar motion on February 15, 2019. The trial court granted those motions by an order entered on September 13, 2019. Neither Mr. DeLano, nor Mr. Bradley, nor TBP is participating in this appeal.

answer and third-party complaint, incorporating the answer and third-party complaint filed by Strauss and adding, as an affirmative defense, that Clarksville Towers had failed to state a claim against him personally. On July 20, 2018, Mr. DeLano filed a suggestion of bankruptcy, stating that Strauss had been named as the debtor in a bankruptcy action. On September 5, 2018, Strauss filed notice that it had removed the matter to the United States Bankruptcy Court for the Middle District of Tennessee ("bankruptcy court"). On October 19, 2018, the bankruptcy court remanded the matter to the trial court based upon Clarksville Towers' voluntary dismissal of all claims against Strauss.

Mr. Straussberger subsequently filed a motion to dismiss for failure to join an indispensable party, asserting that the action should not proceed in Strauss's absence. Mr. Straussberger alternatively argued that the case should be stayed until the bankruptcy proceedings were resolved. The trial court denied Mr. Straussberger's motion by order dated December 14, 2018. The court also ruled that because the claims brought by Clarksville Towers against Strauss were voluntarily dismissed during the bankruptcy proceedings, those claims were dismissed without prejudice. The trial court subsequently entered an agreed order on December 2, 2019, allowing Clarksville Towers to file an amended complaint.

On December 23, 2019, Clarksville Towers filed a motion for partial summary judgment, arguing that "there is no genuine issue of material fact that John Straussberger can be held personally liable to Clarksville Towers as a matter of law." Although no legal basis was set forth in the motion, in its accompanying memorandum of law, Clarksville Towers explained that it based its motion on its interpretation of the "Tennessee Trust Fund Statute," codified at Tennessee Code Annotated § 66-11-138; the Prompt Pay Act of 1991 ("Prompt Pay Act"), codified at Tennessee Code Annotated § 66-34-101, *et seq*.; and the Tennessee Contractors Licensing Act, codified at Tennessee Code Annotated § 62-6-101, *et seq*.

On January 9, 2020, Clarksville Towers filed an amended complaint, naming only Mr. Straussberger as a defendant. In the amended complaint, Clarksville Towers asserted violations of the Tennessee Contractors Licensing Act, the TCPA, the Tennessee Trust Fund Statute, and the Prompt Pay Act, as well as breach of fiduciary duty. Clarksville Towers sought a judgment for the "$1,335,165.73 discrepancy between the amount [it] paid the Contractor and the amount the Contractor paid the subcontractors for the same amount of work" as well as $569,220.10 in "additional costs to complete the Project." It also sought treble damages pursuant to the TCPA, punitive damages, prejudgment interest, and an award of its reasonable attorney's fees and expenses incurred.

Mr. Straussberger subsequently filed a motion seeking to dismiss Clarksville Towers' claims on the basis that the amended complaint failed to state a claim against him. Mr. Straussberger also filed a motion for summary judgment, asserting that he could not be held personally liable for the actions of Strauss, whether based upon the Tennessee

- 3 -

Contractors Licensing Act, the TCPA, the Tennessee Trust Fund Statute, the Prompt Pay Act, or any claim for breach of fiduciary duty. Mr. Straussberger also filed an answer to the amended complaint, denying any liability.

Although no hearing was held on the cross-motions for summary judgment, the trial court entered an order on May 13, 2020, granting summary judgment in favor of Mr. Straussberger and denying Clarksville Towers' motion for partial summary judgment. The court found that there were no genuine issues of material fact and that Clarksville Towers' contract was with Strauss, a corporation, rather than Mr. Straussberger. The court also determined that Clarksville Towers had not attempted to pierce the corporate veil.

The trial court further found that there were "no facts contained in this record to support an allegation that [Mr. Straussberger] represented or misrepresented the status or non-existence" of Strauss's contractor's license, such that he could be held liable pursuant to Tennessee Code Annotated § 62-6-136(c) of the Tennessee Contractors Licensing Act. In addition, the trial court concluded that the Tennessee Trust Fund Statute only applied to "prime" or "remote" contractors and that Strauss was the contractor, not Mr. Straussberger, because there was "no proof in this record that [he] ever held a Tennessee contractor's license." The court likewise determined that the Prompt Pay Act did not apply because Clarksville Towers was an owner, not a contractor, subcontractor, laborer, or materialman. The court also determined that no fiduciary duty was owed by Mr. Straussberger to Clarksville Towers and that no facts existed upon which Mr. Straussberger could be held personally liable under the TCPA. The court accordingly dismissed all of Clarksville Towers' claims against Mr. Straussberger. Clarksville Towers timely appealed.

## II. Issues Presented

Clarksville Towers presents the following issues for our review, which we have restated slightly:

1.    Whether the trial court erred by determining that Mr. Straussberger could not be held personally liable under the Tennessee Contractors Licensing Act and the TCPA for his actions in disbursing funds from the bank account of a corporation solely owned by him while that corporation was contracting without a valid license.

2.    Whether the trial court erred by determining that Mr. Straussberger could not be held personally liable under the Tennessee Trust Fund Statute for misallocating payments intended for Clarksville Towers' subcontractors.

3.    Whether the trial court erred by determining that Clarksville Towers could not state a claim against Mr. Straussberger under the Prompt Pay Act.

4.    Whether the trial court erred by determining that Mr. Straussberger could not be held liable under the Prompt Pay Act for failing to hold in trust the monies Clarksville Towers provided to pay its subcontractors.

III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250 (citing *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013)).

As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set

forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. [574,] 586, 106 S. Ct. 1348 [89 L.Ed.2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. "Whether the nonmoving party is a plaintiff or a defendant— and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must state the legal grounds upon which the court denies or grants the motion for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

This appeal also involves issues of statutory construction, which are questions of law reviewed *de novo* with no presumption of correctness. *See In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). Our Supreme Court has summarized the principles involved in statutory construction as follows:

When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.,* 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.,* 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning

without complicating the task. *Eastman Chem. Co. v. Johnson,* 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.,* 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool,* 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson,* 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga,* 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State,* 908 S.W.2d 923, 926 (Tenn. 1995).

*Id.* at 613-14.

### IV. Tennessee Contractors Licensing Act and TCPA Claims

Clarksville Towers argues that summary judgment was improvidently granted in favor of Mr. Straussberger on Clarksville Towers' claims pursuant to the Tennessee Contractors Licensing Act and the TCPA. It asserts that the Tennessee Contractors Licensing Act of 1994, codified at Tennessee Code Annotated § 62-6-101, *et seq.* (2019 & Supp. 2020), requires contractors "to be licensed with sufficient capital so that project owners like Clarksville Towers are protected and provides that the owner of a corporation that contracts without a license is personally liable to pay for his actions." Clarksville Towers specifically relies upon Tennessee Code Annotated § 62-6-136 (2019), which provides:

(a)     It is unlawful for any person, firm or corporation to represent itself as a licensed contractor or to act in the capacity of a "contractor" as defined in §§ 62-6-102, or 62-37-103 [repealed], and related rules and regulations of this state, or any similar statutes, rules and regulations of another state, while not licensed, unless such person, firm or corporation has been duly licensed under § 62-6-103 or [former] § 62-37-104 [repealed].

(b)     In addition to the penalties set out in § 62-6-120, [former] § 62-37-114 [repealed] or [former] § 62-37-127 [repealed], a violation of this section shall be construed to constitute an unfair or deceptive act or practice affecting the conduct of trade or commerce under the Tennessee Consumer Protection Act of 1977, compiled in title 47,

chapter 18, part 1; and, as such, the private right of action remedy under the Tennessee Consumer Protection Act of 1977 shall be available to any person who suffers an ascertainable loss of money or property, real, personal or mixed, or any other article, commodity or thing of value wherever situated as a result of the violation.

(c)     An individual who violates this section and would, but for this section, have limited liability as owner of an entity having limited liability protection, including, but not limited to, a corporation, is personally liable for the individual's own representations, acts or omissions to the same extent as if that individual rendered the representations, acts or omissions as an individual.

Tennessee Code Annotated § 62-6-136(a) references the definitions contained in Tennessee Code Annotated § 62-6-102 (2019), wherein "contractor" is defined as:

any person or entity that undertakes to, attempts to or submits a price or bid or offers to construct, supervise, superintend, oversee, schedule, direct or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down or furnishing labor to install material or equipment for any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, housing development, improvement or any other construction undertaking for which the total cost is twenty-five thousand dollars ($25,000) or more . . . .

Tenn. Code Ann. § 62-6-102(4)(A)(i). Tennessee Code Annotated § 62-6-102(4)(A) further provides:

(ii)     "Contractor" includes, but is not limited to, a prime contractor, electrical contractor, electrical subcontractor, mechanical contractor, mechanical subcontractor, plumbing contractor and plumbing subcontractor, masonry contractor, and roofing subcontractor where the total cost of the roofing portion of the construction project is twenty-five thousand dollars ($25,000) or more;

(iii)     If the cost of a project exceeds twenty-five thousand dollars ($25,000), "contractor" also includes a construction manager of any kind, including, but not limited to, a residential construction manager, construction consultant, architect or engineer who conducts or provides any activity or service described in this subdivision (4) other than normal architectural and engineering services[.]

In addition, Tennessee Code Annotated § 62-6-102(7) defines a "prime contractor" as "one who contracts directly with the owner[.]" As our Supreme Court has previously recognized, "contracting" encompasses "all phases and aspects of construction—from contract formation through the contract's completion." *See Kyle v. Williams*, 98 S.W.3d 661, 665 (Tenn. 2003); *see also* Tenn. Code Ann. § 62-6-102(3), (4)(A), (7).

By its plain language, Tennessee Code Annotated § 62-6-136(b) provides that a private right of action exists pursuant to the TCPA to recover for a monetary or property loss as a result of dealing with a contractor who contracted without a license, denominating such a violation of that subsection to be an "unfair or deceptive act or practice affecting the conduct of trade or commerce." Pertinent to § 62-6-136(b), the TCPA provides in Tennessee Code Annotated § 47-18-109(a)(1) (Supp. 2020):

> Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part, may bring an action individually to recover actual damages.

Moreover, Tennessee Code Annotated § 47-18-104(b) (Supp. 2020) of the TCPA defines the following as an "unfair or deceptive act or practice affecting the conduct of any trade or commerce" and declares it "unlawful":

> (35) Representing that a person is a licensed contractor when such person has not been licensed as required by § 62-6-103 or § 62-6-502; or, <u>acting in the capacity of a contractor</u> as defined in § 62-6-102 (4)(A), § 62-6-102(7) or § 62-6-501, and related rules and regulations of the state of Tennessee, or any similar statutes, rules and regulations of another state, <u>while not licensed</u>[.]

Tenn. Code Ann. § 47-18-104(b)(35) (emphasis added) (referencing the definitions contained in § 62-6-102(4)(A) and (7) of the Contractors Licensing Act).

In this matter, there is no dispute that Strauss was duly licensed at the time construction began in June 2017 and when the contract between Strauss and Clarksville Towers was executed approximately one month later. However, Strauss's license expired on March 31, 2018, before the project was completed. As such, Strauss acted as an unlicensed contractor because it did not maintain a valid contractor's license throughout the entire time period that it performed the contracting services. *See Kyle*, 98 S.W.3d at 666 (holding that "a contractor is unlicensed for purposes of Tennessee Code Annotated section 62-6-103(b) if the contractor does not maintain a valid contractor's license throughout the entire time contracting services are performed under the contract.").

Based upon the High Court's holding in *Kyle*, Strauss could be held liable as an unlicensed contractor pursuant to Tennessee Code Annotated § 62-6-136(b) and the TCPA. However, the issue presented herein is whether Mr. Straussberger could be held personally liable in this case pursuant to Tennessee Code Annotated § 62-6-136(b) and the TCPA, which question turns on whether the facts presented at the summary judgment stage demonstrated that Mr. Straussberger, individually, acted in the capacity of a contractor.

Mr. Straussberger has acknowledged that he was the president and sole owner of Strauss. The parties agree, however, that Mr. Straussberger was not personally involved in the negotiations or bidding process for the Clarksville Towers contract. No evidence was presented that Mr. Straussberger personally had supervised, managed, scheduled, directed, or assumed charge of any part of the construction project. Again, the parties agree that Mr. Straussberger's only involvement with the Clarksville Towers project was to sign checks that were presented to him. It is undisputed that Mr. Straussberger neither prepared nor approved any pay applications, nor did he determine which subcontractors were to be paid. Accordingly, we agree with the trial court that his actions do not amount to "acting in the capacity of a contractor" without a license so as to be declared in violation of Tennessee Code Annotated § 62-6-136(b) or the TCPA. *See* Tenn. Code Ann. § 62-6-102.

Moreover, according to Mr. Straussberger's affidavit, he "did not direct that Plaintiff's payments be used for other projects or business obligations or diverted for improper purposes." Clarksville Towers has pointed to no evidence in the record illustrating that this fact is disputed,[2] and it has otherwise failed to demonstrate how Mr. Straussberger's act of signing checks to pay his company's debts constituted an unfair or deceptive representation, act, or omission. As such, we find no violation of Tennessee Code Annotated § 62-6-136(b) or Tennessee Code Annotated § 47-18-104(35) by Mr. Straussberger.

Turning to Tennessee Code Annotated § 62-6-136(c), this subsection specifically imposes personal liability on an owner for the owner's "own representations, acts or omissions." Although this subsection has not been specifically construed by the courts of this State, the federal district and bankruptcy courts in Tennessee that have considered the question have determined that such "representations, acts or omissions" of an owner must relate to the company's licensure status in order to create liability under the Tennessee Contractors Licensing Act. *See Constr. Mgmt., Inc. v. Expo Hosp., LLC*, No. 3:19-CV-00298, 2020 WL 489461, at *8 (M.D. Tenn. Jan. 30, 2020) (determining that liability under this subsection only attaches to "an individual who falsely holds himself out as licensed for

---

[2] Clarksville Towers' reliance on its own argument in a memorandum of law to refute this statement of Mr. Straussberger, as set forth in his affidavit and statement of undisputed material facts, does not satisfy the demands of Rule 56.04 or create a genuine issue of material fact that would preclude summary judgment.

general contracting"); *Triumph Hosp., LLC v. Constr. Mgmt., Inc.*, No. 3:19-CV-00353, 2019 WL 3841942, at \*10 (M.D. Tenn. Aug. 15, 2019) (finding that a claim under Tennessee Code Annotated § 62-6-136(c) must be based on "whether [the owner] himself engaged in fraudulent misrepresentations or omissions regarding the licensure status of [his construction company]"); *In re Heinz*, No. 10-52964, 2011 WL 4730909, at \*4 (Bankr. E.D. Tenn. Oct. 5, 2011) ("[P]ursuant to the Tennessee Contractor Licensing Act of 1994, any individual who has an ownership in a corporation and makes misrepresentations about the corporation's status as a licensed contractor is personally liable for the misrepresentation."). We recognize that these authorities are not binding on this Court's decision. *See Townes v. Sunbeam Oster Co., Inc.*, 50 S.W.3d 446, 452 (Tenn. Ct. App. 2001) ("When a federal court undertakes to decide a state law question in the absence of authoritative state precedent, the state courts are not bound to follow the federal court's decision."). However, based on the primary requirement stated in the Tennessee Contractor Licensing Act that a contractor be and remain "duly licensed with a monetary limitation sufficient to allow the person, firm, or corporation to engage in or offer to engage in such contracting project under this chapter," we believe the above-described interpretation of Tennessee Code Annotated § 62-6-136(c) employed by the federal courts to be appropriate.

In this matter, Clarksville Towers has set forth no proof demonstrating that Mr. Straussberger misrepresented the status of Strauss' contractor's license after it expired on March 31, 2018, or at any other time. In fact, in Clarksville Towers' response to Mr. Straussberger's statement of undisputed material facts, Clarksville Towers admitted that Mr. Straussberger "never made any representations to Plaintiffs about Strauss'[s] license, and the subject matter never came up until Plaintiff's termination letter raised the license expiration." As such, we determine that Mr. Straussberger cannot be held personally liable pursuant to Tennessee Code Annotated § 62-6-136(c).

Inasmuch as essential elements of a cause of action pursuant to both the Tennessee Contractors Licensing Act and the TCPA have been negated, we need not consider whether Mr. Straussberger's actions caused Clarksville Tower's losses, an element to which the parties devote ample argument in their appellate briefs. We conclude that no liability can attach to Mr. Straussberger on the basis of the Tennessee Contractors Licensing Act or the TCPA and affirm the trial court's grant of summary judgment on these claims.

V. Tennessee Trust Fund Statute

Clarksville Towers also claims that Mr. Straussberger is liable under the "Tennessee Trust Fund Statute,"[3] codified at Tennessee Code Annotated § 66-11-138 (2015) ("Trust Fund Statute"), which provides:

---

[3] Although the Legislature did not title this statute as such, it has been referred to in this manner seemingly based on the Tennessee Supreme Court's interpretation in *Daugherty v. State* of the statute's predecessor

- 11 -

(a)(1) Any prime contractor or remote contractor who, with intent to defraud, uses the proceeds of any payment made to that contractor on account of improving certain real property for any purpose other than to pay for labor performed on, or materials, services, equipment, or machinery furnished by that contractor's order for the real property, and overhead and profit related thereto, while any amount for the labor, materials, services, equipment, machinery, overhead, or profit remains unpaid shall be liable to an injured party for any damages and actual expenses incurred, including attorneys' fees, if the damages and expenses incurred are the result of the misapplication of the payment.

(2) A violation of subdivision (a)(1) is a Class E felony.

(b) Notwithstanding subsection (a), there is no violation of this section when:

(1) Funds are disbursed pursuant to written agreement; or

(2) The use of funds received and deposited in a business account for use on multiple construction projects is based on the allocation of costs and profits in accordance with generally accepted accounting principles for construction projects.

The applicable definitions section, found at Tennessee Code Annotated § 66-11-101 (2015), defines a "prime contractor" in pertinent part as:

as creating a type of trust fund:

> A statute of this nature is intended to make the payments to the contractor trust funds for the payment of labor and materials, and to afford protection against contractors who receive money for construction or repair of buildings and divert it to other uses prior to payment of claims for labor, materials, or other charges in connection with the work on the buildings. The legislative purpose is to punish for a fraudulent conversion and not for failure to comply with a contractual obligation. The essential elements for the commission of the offense are the payment of the money to a contractor by the owner for the construction of a building and a diversion of the money to other purposes by the contractor prior to the payment of all claims for which the money constitutes a trust fund. 29A C.J.S. Embezzlement § 19(2) (1965).

393 S.W.2d 739, 741 (Tenn. 1965). At the time *Daugherty* was decided, the statute only provided for criminal liability for its violation, although statutory amendments enacted in 2007 added civil liability for the statute's violation as well. *See* 2007 Tenn. Pub. Acts, Ch. 189, § 37, eff. May 18, 2007. The 2007 amendments likewise modified the statute's application to only "prime" and "remote" contractors. *See id.*

any person other than a remote contractor who supervises or performs work or labor or who furnishes material, services, equipment, or machinery in furtherance of any improvement; provided, that the person is in direct privity of contract with an owner, or the owner's agent, of the improvement. A "prime contractor" also includes a person who takes over from a prime contractor the entire remaining work under such a contract[.]

Tenn. Code Ann. § 66-11-101(12). A "remote contractor" is defined as:

a person, including a land surveyor as defined in § 62-18-102 and a person licensed to practice architecture or engineering under title 62, chapter 2, who provides work or labor or who furnishes material, services, equipment or machinery in furtherance of any improvement under a contract with a person other than an owner[.]

Tenn. Code Ann. § 66-11-101(14). "Person" is broadly defined as "an individual, corporation, limited liability company, partnership, limited partnership, sole proprietorship, joint venture, association, trust, estate, or other legal or commercial entity." Tenn. Code Ann. § 66-11-101(11).

Unlike the Tennessee Contractors Licensing Act, discussed in the previous section, Tennessee Code Annotated § 66-11-138 does not provide any mechanism for piercing the corporate veil to impose personal liability on the prime or remote contractor's owner. As the trial court noted, Clarksville Towers did not seek to have the court pierce the corporate veil in this case. *See Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 215 (Tenn. 2012) (explaining that the corporate veil may be pierced when the separate corporate entity is a "sham or a dummy" and detailing the eleven factors to be considered when determining whether piercing the corporate veil is warranted). Therefore, our analysis of Clarksville Towers' claim made pursuant to the Trust Fund Statute must turn on whether Mr. Straussberger, individually, can be considered either a prime or remote contractor based on the definitions found in Tennessee Code Annotated § 66-11-101.

We find unpersuasive Clarksville Towers' arguments attempting to impose personal liability pursuant to the wholly different statutory scheme set forth in the Tennessee Contractors Licensing Act for violations of the Trust Fund Statute. For liability to attach pursuant to the Trust Fund Statute, Clarksville Towers would have to prove that Mr. Straussberger was the prime contractor, in privity of contract with the owner, or a remote contractor, who personally "provide[d] work or labor or who furnishe[d] material, services, equipment or machinery in furtherance of any improvement under a contract with a person other than an owner." *See* Tenn. Code Ann. § 66-11-101(12), (14).

The undisputed facts demonstrate that the construction contract at issue was between Clarksville Towers, as owner, and Strauss, as prime contractor. The contract identified Scott DeLano, Vice President of Strauss, as the "Contractor's representative," and Mr. DeLano signed the contract in that capacity. The parties agree that Mr. Straussberger was not personally involved in the negotiation or bidding of the Clarksville Towers contract. More importantly, the record contains no proof that Mr. Straussberger was in privity of contract with the owner or that he personally provided work, labor, materials, services, or equipment for the construction project "under a contract with a person other than the owner."[4] *See id.* Ergo, Mr. Straussberger, as an individual, was not acting as a prime or remote contractor pursuant to the definitions found in the Trust Fund Statute. As such, the trial court properly granted summary judgment in favor of Mr. Straussberger on this claim.

## VI. Tennessee Prompt Pay Act

Finally, Clarksville Towers argues that Mr. Straussberger should be held personally liable pursuant to the Prompt Pay Act, codified at Tennessee Code Annotated § 66-34-101, *et seq.* (2015 & Supp. 2020). The Prompt Pay Act utilizes the definitions set forth in Tennessee Code Annotated § 66-11-101 of the Trust Fund Statute. *See* Tenn. Code Ann. § 66-34-102 (2015). Clarksville Towers specifically relies upon the version of § 66-34-304 of the Prompt Pay Act in effect at the time of the complaint's filing, which required that "[a]ny sums received by the contractor as payment for work, services, equipment, and materials supplied by the subcontractor, materialman or furnisher for improvements to real property must be held by the contractor in trust for the benefit and use of such subcontractor, materialman or furnisher and shall be subject to all legal and equitable remedies." Tenn. Code Ann. § 66-34-304 (2015).[5] We note, however, that the plain language of § 66-34-304 addresses only the relationship between the contractor and its subcontractors or materialmen.

---

[4] We also find Clarksville Towers' reliance upon cases construing the criminal portion of the statute prior to the 2007 amendments to be unavailing.

[5] Effective July 1, 2020, the General Assembly amended Tennessee Code Annotated § 66-34-304 to substitute "prime contractor in place of "contractor" and "remote contractor" in place of "subcontractor, materialman or furnisher," now providing as follows:

> Any sums received by the prime contractor as payment for work, services, equipment, and materials supplied by the remote contractor for improvements to real property must be held by the prime contractor in trust for the benefit and use of the remote contractor, and are subject to all legal and equitable remedies.

*See* 2020 Tenn. Pub. Acts, Ch. 749, § 26 (S.B. 2681).

- 14 -

Certain provisions within the Prompt Pay Act provide for a private right of action benefitting a contractor or subcontractor based on an owner's or contractor's nonpayment for work performed. *See* Tenn. Code Ann. § 66-34-104 (2015) (providing that if funds retained pursuant to a construction contract are not timely released, "the prime contractor or remote contractor, as applicable, may seek any remedy in a court of proper jurisdiction[.]"; *see also* § 66-34-602 (2015) ("A contractor who has not received payment from an owner, or a subcontractor, materialman or furnisher who has not received payment from a contractor or other subcontractor, materialman or furnisher . . . shall notify the party failing to make payment" and "the notifying party may, in addition to all other remedies available at law or in equity, sue for equitable relief, including injunctive relief, for continuing violations of this chapter, in the chancery court of the county in which the real property is located."). As the trial court noted in its final order, however, the provisions of the Prompt Pay Act do not provide such relief to an owner.

In instances when a statute does not expressly create a private right of action, this Court may "examin[e] the statute's structure and legislative history" to determine whether the legislature intended to imply a private right of action. *See Affordable Constr. Servs., Inc. v. Auto-Owners Ins. Co.*, ___ S.W.3d ___, ___, No. M2020-01417-SC-R23-CV, 2021 WL 1608412, at *3 (Tenn. Apr. 26, 2021). Based on the factors outlined by our Supreme Court, we determine that no private right of action benefitting an owner is implied within the Prompt Pay Act because (1) an owner is not an intended beneficiary within the protection of the statute, as evinced by the statute's sole focus on the timely payment of contractors and subcontractors; (2) Clarksville Towers has not "proven that there was any express or implied indication of a legislative intent to create or deny a private right of action" benefitting an owner; and (3) implying such a right is inconsistent with the underlying purpose of the legislation, which is to ensure prompt payment of contractors and subcontractors under construction contracts. *See id.* at __-__, *3-6; *see also* Tenn. Code Ann. § 66-34-602.

Nevertheless, Clarksville Towers argues that by paying the subcontractors itself, it has stepped into Mr. Straussberger's shoes and is entitled to recover the amounts paid from Mr. Straussberger via the doctrine of equitable subrogation. This Court has previously explained the doctrine of equitable subrogation as follows:

> Tennessee applies the doctrine of equitable subrogation. *Bankers Trust Co. v. Collins,* 124 S.W.3d 576, 579 (Tenn. Ct. App. 2003). Equitable subrogation "'does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect.'" *Hartman v. State,* No. M2002-01430-COA-R3-CV, 2003 WL 1872648, *6 (Tenn. Ct. App. Apr. 14, 2003) (quoting 83 C.J.S. *Subrogation* § 4 (2000)). The purpose of equitable subrogation has been described as follows:

It is an equitable doctrine designed to obtain substantial justice and to prevent wrongdoing. It arises when a person, even if for his own benefit, pays a debt for which another is also liable. The Tennessee Supreme Court has held that an insurer was subrogated to the rights its insured had against others when the insurer paid its insured's claim.

*Almany v. Nationwide Ins. Co.,* No. 85-341-II, 1987 WL 4745, *4 (Tenn. Ct. App. Jan. 29, 1987) (citations omitted). Equitable subrogation is based on the principle that "'substantial justice should be attained regardless of form, that is, its basis is the doing of complete, essential, and perfect justice between all the parties without regard to form.'" *Castleman Constr. Co. v. Pennington,* 222 Tenn. 82, 432 S.W.2d 669, 674 (1968) (quoting 83 C.J.S. *Subrogation* §§ 1-2).

*Acuity v. McGhee Eng'g, Inc.*, 297 S.W.3d 718, 724 (Tenn. Ct. App. 2008).

We find Clarksville Towers' reliance on the doctrine of equitable subrogation unavailing in this instance. First, we are mindful of the fact that we are reviewing the trial court's ruling on cross-motions for summary judgment. Neither Clarksville Towers' statement of undisputed material facts filed with its motion for partial summary judgment nor its response to Mr. Straussberger's statement of undisputed material facts filed with his motion for summary judgment points to any evidence in the record demonstrating that Clarksville Towers paid the subcontractors itself, such that its reliance on this doctrine is justified.[6] *See* Tenn. R. Civ. P. 56.03 (providing that when a motion for summary judgment is filed, facts relied upon by the movant are to be supported by specific citations to the record). Moreover, although Clarksville Towers' appellate brief makes the bald assertion that it "paid the debt to the subcontractors so it could finish its dormitory," Clarksville Towers again provides no citation to proof in the record to support its statement.

Second, as Clarksville Towers admits in its appellate brief, the doctrine of equitable subrogation has never been applied in the context of a claim under the Prompt Pay Act. Clarksville Towers has provided no authority for application of the doctrine in this instance even if the facts supported it.

Third and most importantly, assuming, *arguendo*, that Clarksville Towers could rely on the doctrine of equitable subrogation here, it has failed to demonstrate that Mr. Straussberger would be the party from whom repayment could be sought. If Clarksville Towers were allowed to "stand in the shoes" of Strauss's subcontractors, the subcontractors' remedy would be against Strauss because Strauss was the contractor—not

---

[6] Although Clarksville Towers cites to the April 27, 2018 affidavit of Donald A. DiRenzo as proof of this statement, the respective affidavit states no such thing and contains no documentary evidence of this claim.

Mr. Straussberger. As such, Strauss would have been the entity required to hold Clarksville Towers' payments in trust for the subcontractors.

The Prompt Pay Act's provisions simply do not impose personal liability on the owner of a company when that company is operating as a prime contractor. To hold otherwise would undermine the effect of creating a corporation and operating within the strictures imposed on such business entities instead of as a sole proprietorship. *See Cambio Health Sols., LLC v. Reardon*, 213 S.W.3d 785, 790 (Tenn. 2006) ("The separate legal status of a corporation protects its shareholders from direct responsibility for the corporation's debts and other liabilities, except in rare circumstances when a plaintiff is successful in persuading a court to disregard the separate corporate entity, also referred to as 'piercing the corporate veil.'" (quoting *Cont'l Bankers Life Ins. Co. v. Bank of Alamo,* 578 S.W.2d 625, 631 (Tenn. 1979)).

We reiterate that Clarksville Towers did not request that the trial court pierce Strauss's corporate veil. Moreover, Clarksville Towers has made no attempt to demonstrate facts that would justify piercing the corporate veil. *See Rogers*, 367 S.W.3d at 215. As explained in the previous section concerning the Trust Fund Statute, the Prompt Pay Act provides no basis for Mr. Straussberger's personal liability because he, individually, was not a prime or remote contractor pursuant to the applicable statutory definitions.

Clarksville Towers further asserts that Mr. Straussberger can be held personally liable pursuant to the Prompt Pay Act based on a theory of breach of fiduciary duty. We note, however, that Clarksville Towers is, at best, a creditor of Strauss, and our Supreme Court has unequivocally held that "individual creditors of an insolvent corporation have no right to assert direct claims for breach of fiduciary duty against corporate officers and/or directors." *See Sanford v. Waugh & Co., Inc*., 328 S.W.3d 836, 847 (Tenn. 2010). We therefore affirm the trial court's grant of summary judgment in favor of Mr. Straussberger on Clarksville Towers' Prompt Pay Act and fiduciary duty claims.

VII. Conclusion

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Mr. Straussberger and dismissal of all causes of action against him. We remand this case to the trial court, pursuant to applicable law, for collection of costs assessed below. Costs on appeal are assessed to the appellant, Clarksville Towers, LLC.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE