IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 20, 2024 Session

FILED
NOV 04 2024
Clerk of the Appellate Courts
REc'd By _____

# JEROMY TYSON RATCLIFF v. MELODY LEANN RATCLIFF NEAL

**Appeal from the Circuit Court for Bradley County**
No. V-04-871        J. Michael Sharp, Judge

_____

**No. E2023-01152-COA-R3-CV**

_____

In this child support dispute, the mother filed a petition to extend child support for an adult child due to the child's severe disability. The father filed a motion to dismiss the petition for lack of subject matter jurisdiction, which the trial court denied. Following a bench trial, the court entered an order determining that the parties' adult son was severely disabled and directing the father to pay child support "going forward" and retroactively. The father sought to amend the final judgment, again raising the issue of the trial court's subject matter jurisdiction and also requesting that the final order be set aside until the child could undergo a vocational evaluation. The trial court denied the motion to alter or amend. The father has appealed. Discerning no reversible error, we affirm. Upon consideration, we decline the mother's request for attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Charles W. Wheland, III, Chattanooga, Tennessee, for the appellant, Jeromy Tyson Ratcliff.[1]

Mark Randall Sellers, Cleveland, Tennessee, for the appellee, Melody Leann Ratcliff Neal.

---

[1] Throughout the record and in the style of the case on many of the trial court's orders, including the final order setting the amount of child support, the appellant's given name is spelled as "Jerome." Because the appellant's given name is spelled as "Jeromy" in the initial pleadings, in his own signature on a pleading verification, in the notice of appeal, and in the appellate briefs, we have adopted that spelling in this Opinion. No disrespect is intended.

## OPINION

### I. Factual and Procedural Background

The parties, Jeromy Tyson Ratcliff ("Father") and Melody Leann Ratcliff Neal, ("Mother"), were divorced by decree of the Bradley County Circuit Court ("trial court") on January 23, 2006. At the time of the divorce, the parties had two minor children. In an agreed permanent parenting plan order entered concomitantly with the divorce decree, the trial court ordered Father to pay child support directly to Mother for both children. The parties' youngest child, J.T.R. ("the Child"), born in June 2000, is the subject of this dispute.

The instant action began on June 27, 2019, when Mother filed a petition to extend child support past the Child's twenty-first birthday due to a severe disability ("the June 2019 Petition"). The procedural history leading to Mother's petition is essentially undisputed. The initial child support order remained in effect until Father sought to modify it via a petition filed in April 2018. By August 2018, when the parties appeared before the trial court on Father's modification petition, both children had reached the age of majority. However, the Child had not yet graduated from high school or obtained an equivalent certification. The trial court entered an order granting modification of child support on January 9, 2019 ("the January 2019 Order"). In the January 2019 Order, the trial court set Father's child support obligation for the Child at $938.00 monthly, pursuant to the Tennessee Child Support Guidelines ("the Guidelines"), through May 16, 2019, the date that the Child and his class were set to graduate from high school.

In her petition to extend child support, Mother averred that the Child had been declared disabled as of January 26, 2019, by the Social Security Administration ("SSA") and that the SSA had backdated the declaration to May 2018. Additionally, Mother averred that the Child had been drawing Supplemental Security Income ("SSI") benefits since April 17, 2019. Father filed an answer on October 2, 2019, claiming the affirmative defenses of failure to state a claim upon which relief could be granted, lack of subject matter jurisdiction, and untimeliness. On February 18, 2020, Father filed a motion to dismiss based on the aforementioned grounds. He also countered Mother's assertion that the Child was disabled. Mother filed a response opposing the motion to dismiss on April 16, 2020.

Following a hearing, the trial court denied Father's motion to dismiss in an order entered on July 15, 2020. The court found that (1) the Child had been determined disabled for the purposes of SSI benefits, (2) the SSI determination had been backdated to May 2018, (3) a child support order had been entered while the Child was still a minor, (4) the Child had not graduated from high school when he turned eighteen, and (5) the

-2-

Child was not expected to graduate from high school until May 2019.[2] Regarding Father's argument that the court's subject matter jurisdiction over child support had ended because Mother had failed to file her petition prior to the May 2019 expected graduation date, the court stated: "[T]he key that the court will consider most weighty in this matter is that the [SSA] found the child to be disabled effective as of May 2018." Accordingly, the court declared that it maintained subject matter jurisdiction respecting the matter. The court directed that Father's child support obligation was to continue until a final hearing on Mother's petition took place.

On January 5, 2021, Father filed a motion, pursuant to Tennessee Rule of Civil Procedure 35.01, requesting that the trial court direct the Child to participate in an independent evaluation to determine his level of disability, if any. The court granted the motion in an agreed order entered on March 3, 2021, and Dr. William Hilner, a clinical psychologist, subsequently completed a psychological evaluation of the Child. Mother filed a motion to seal Dr. Hilner's evaluation report and requested that the trial court inspect the report *in camera*. In the meantime, the trial court issued an order on April 1, 2021, directing Father to make retroactive child support payments.

The trial court conducted a bench trial on February 2, 2022, hearing testimony from both parties and Dr. Hilner. The court granted Mother's motion to seal Dr. Hilner's psychological evaluation report and reviewed the report *in camera*. The sealed report is contained in the appellate record.

On February 28, 2022, the trial court entered an order ("the February 2022 Order") determining the Child to be severely disabled. In support, the court found that due to several learning and developmental issues, it was highly unlikely that the Child would ever be able to maintain "full employment" or independence. The court credited Dr. Hilner's testimony wherein he opined that a vocational evaluation was needed to determine the Child's abilities and that being a store greeter would be the extent of the Child's employment capacity. The court further found that there was no proof contradicting Dr. Hilner's assessment that the Child was not able to perform "many of the daily needs and/or daily requirements of a functioning adult." The court also credited Dr. Hilner's assessment that the Child functioned at the level of an eight- or nine-year-old child and found no evidence that the Child would ever function at a higher level.

Based on these findings, the trial court agreed with Dr. Hilner's recommendation that the Child should start vocational evaluation and/or training at a facility near home.

---

[2] Testimony during the final hearing indicated that Mother withdrew the Child from high school when he was seventeen years of age and that she subsequently taught him in a home-school environment. According to Father's testimony, the Child had earned a "Certificate of Completion" rather than a diploma.

The court stated that this was a "necessary step" and "should begin immediately." However, while noting that Mother had not yet sought a vocational evaluation for the Child, the court did not premise its finding of severe disability on a future vocational evaluation. Furthermore, the court determined that it was necessary for the Child to continue residing with Mother under her supervision for as long as Mother could continue in her role as caregiver. The court also determined that Father had the ability to pay child support and ordered him to pay child support "going forward" indefinitely and retroactively to the date that Mother's petition had been filed. Upon finding that Mother had relinquished her employment outside the home in part to assist her current husband, who is disabled, the court directed the parties to incorporate Mother's average income for the three years prior to her unemployment into the calculation of Father's child support obligation.

In a motion filed on April 26, 2022, Father sought clarification of the amount of child support he had been ordered to pay. On May 12, 2022, Mother filed a motion requesting an award of reasonable attorney's fees and expenses. On October 20, 2022, Father filed a memorandum in support of his April 2022 motion, averring in part that adherence to the Guidelines would prompt an "inappropriate result" by failing to consider the Child's SSI benefits.

On December 22, 2022, the trial court entered an order ("the December 2022 Order") setting Father's final child support obligation at $980.00 monthly pursuant to the Guidelines. The court also directed Father to pay an arrearage of $22,358.00 based on a calculation of $980.00 per month from May 20, 2019, to October 31, 2022. The court further set forth a schedule for payment of the arrearage. In a separate order entered the same day, the court awarded to Mother what it found to be reasonable attorney's fees and expenses in the amount of $3,406.50.

The trial court subsequently entered an agreed order substituting Father's appellate counsel in place of his trial counsel. Father then filed a timely motion to alter or amend the December 2022 Order pursuant to Tennessee Rule of Civil Procedure 59.04. He specifically requested that the trial court reconsider its prior subject matter jurisdiction ruling. Father also requested that the court set aside the December 2022 Order until the Child underwent a vocational evaluation to ascertain whether the Child would be capable of earning wages that would offset Father's obligation.

Following a hearing conducted on July 26, 2023, the trial court ruled from the bench, denying the motion to alter or amend. Father filed a premature notice of appeal on August 11, 2023. The trial court subsequently entered its final order denying the motion to alter or amend on August 30, 2023, and this Court treated Father's notice of appeal as timely pursuant to Tennessee Rule of Appellate Procedure 4(d).

- 4 -

## II. Issues Presented

Father has presented three issues on appeal, which we have restated slightly as follows:

1. Whether the trial court erred by finding that Father's child support obligation would continue for the remainder of the Child's adult life when Mother had filed her petition to modify support after the prior support order had purportedly terminated.

2. Whether the trial court erred by declining to require that the Child undergo a vocational assessment prior to the court's setting of the child support amount.

3. Whether the trial court erred by awarding attorney's fees to Mother for the prosecution of her petition to modify support.

## III. Standard of Review

Our review of the trial court's judgment following a non-jury trial is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

"Whether a court possesses subject matter jurisdiction over an action is a matter of law, which we review *de novo* with no presumption of correctness." *State ex rel. Catalano v. Woodcock*, No. E2015-01877-COA-R9-CV, 2016 WL 3677342, at *3 (Tenn. Ct. App. July 5, 2016) (citing *Turner v. Turner*, 473 S.W.3d 257, 268 (Tenn. 2015); *In re Est. of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013)). "We review child support decisions based upon the deferential 'abuse of discretion' standard." *Niemeyer v. Niemeyer*, No. E2022-01690-COA-R3-CV, 2024 WL 1645829, at *8 (Tenn. Ct. App. Apr. 17, 2024) (citing *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005)). "[R]eviewing courts will set aside a discretionary decision only when the court that made

the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008). A trial court's award of attorney's fees is also subject to review under the abuse of discretion standard. *Thomas v. Smith*, 682 S.W.3d 213, 222 (Tenn. Ct. App. 2023).

## IV. Subject Matter Jurisdiction

Father contends that according to the January 2019 Order, his child support obligation terminated on May 16, 2019, when the Child's high school class graduated. He argues that because Mother filed the June 2019 Petition over a month after his obligation ended, there is no child support obligation to "continue" pursuant to Tennessee Code Annotated § 36-5-101(k)(2). Mother counters that because the trial court did not mention the word, "terminate," in the January 2019 Order and instead stated that the form of direct payment ended on May 16, 2019, the child support obligation had not terminated. She also emphasizes that the trial court maintained broad statutory authority to adjudicate child support issues. Upon careful review of the record and applicable authorities, we conclude that the trial court properly determined that it maintained subject matter jurisdiction to consider Mother's petition and Father's child support obligation.

"Subject matter jurisdiction depends on the nature of the cause of action and the relief sought and can only be conferred on a court by the constitution or a legislative act." *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712 (Tenn. 2021) (internal citations omitted). "Therefore, when a court's subject matter jurisdiction is challenged, the first step is to ascertain the gravamen or nature of the case, and then we must determine whether the Tennessee Constitution or the General Assembly has conferred on the court the power to adjudicate cases of that sort." *Shaw v. Shaw*, No. W2010-02369-COA-R3-CV, 2011 WL 4379052, at *2 (Tenn. Ct. App. Sept. 21, 2011) (citing *Benson v. Herbst*, 240 S.W.3d 235, 239 (Tenn. Ct. App. 2007)). Here, the gravamen of the case is child support, and the authority of the trial court is granted through Tennessee's child support statutory scheme.

In Tennessee, a parent's legal obligation to support his or her child generally ends when "the child graduates from high school or the class of which the child is a member when the child attains eighteen (18) years of age graduates, whichever occurs first." *See* Tenn. Code Ann. § 34-1-102(b) (West October 1, 2007, to current); *see also Corder v. Corder*, 231 S.W.3d 346, 356 (Tenn. Ct. App. 2006) ("[U]nder Tennessee law, a parent is obligated to provide support for children only until they turn eighteen years old or graduate from high school, whichever occurs later."). However, an exception to the general rule exists for a child who, before reaching the age of majority, is determined to be disabled (when support may be continued through age twenty-one) or severely

- 6 -

disabled (when support may be continued indefinitely). *See* Tenn. Code Ann. § 36-5-101(k).

In the instant action, the relevant language of the January 2019 Order stated: "Child support shall continue to be paid by direct deposit from [Father's] employer into [Mother's] bank account until May 16, 2019, the graduation date for Walker Valley High School." It is undisputed that although the Child was withdrawn from high school prior to graduation, the class of which he was a member graduated on May 16, 2019. *See* Tenn. Code Ann. § 34-1-102(b). The trial court's explicit incorporation of the Child's originally anticipated graduation date indicates a reference to the statutory termination date for Father's child support obligation. *See id.* The record contains no petitions or motions before the trial court raising the issue of the Child's disability before May 16, 2019. Even without the trial court's reference to the Child's graduation date, Father's legal obligation to pay child support would have terminated on that date if Tennessee's general rule were applicable with no exception. *See id.*

However, in the July 2020 Order, the trial court concluded that it retained subject matter jurisdiction to consider Mother's child support petition because the Child had been determined by the SSA to be disabled prior to his expected graduation date in May 2019. Noting that a valid child support order for the benefit of the Child had been in place since January 2006, the trial court determined that the statutory exception for a disabled or severely disabled child authorized the court to consider continuation of Father's support obligation beyond May 2019.

The version of Tennessee Code Annotated § 36-5-101(k) (West July 1, 2005 to May 6, 2007) applicable to this action provided:[3]

---

[3] The applicable version of a child support statute "is the one in effect at the time of the divorce complaint's filing[.]" *See Catalano*, 2016 WL 3677342, at *8; *see also Shaw*, 2011 WL 4379052, at *4 (applying Tenn. Code Ann. § 36-5-101(k) as it appeared at the time of the parties' divorce proceedings). We note that throughout the instant proceedings, the parties and the trial court have quoted the current version of Tennessee Code Annotated § 36-5-101(k)(2), which was amended in March 2008 to add the following proviso:

> [I]f the severely disabled child living with a parent was disabled prior to this child attaining eighteen (18) years of age and if the child remains severely disabled at the time of entry of a final decree of divorce or legal separation, then the court may order child support regardless of the age of the child at the time of entry of the decree.

*See* 2008 Tenn. Pub. Acts, Ch. 868, § 3 (H.B. 3044). Given that the parties' divorce decree was entered in 2006, we note that the proviso added to § 36-5-101(k)(2) by the 2008 amendment would not be applicable to this case. However, any citation to the inapplicable version of the statute was harmless inasmuch as the language of the proviso would be irrelevant because it contemplates a situation when a final decree of divorce or legal separation is entered after a child's eighteenth birthday. *See Woodard v.*

- 7 -

(k)(1) Except as provided in subdivision (k)(2), the court may continue child support beyond a child's minority for the benefit of a child who is handicapped or disabled, as defined by the Americans with Disabilities Act, until such child reaches twenty-one (21) years of age.

(2) Provided, that such age limitation shall not apply if such child is severely disabled and living under the care and supervision of a parent, and the court determines that it is in the child's best interest to remain under such care and supervision and that the obligor is financially able to continue to pay child support. In such cases, the court may require the obligor to <u>continue</u> to pay child support for such period as it deems in the best interest of the child.

(3) In so doing, the court may use the child support guidelines.

(Emphasis added.)

Father propounds that the trial court lacked subject matter jurisdiction because after May 16, 2019, there was "not a child support order to 'continue' under the plain language of T.C.A. [§] 36-5-101(k)." Although the parties dispute whether the trial court's language in the January 2019 Order meant that support was to terminate on May 16, 2019, or simply that payment by direct deposit was to end, we do not find the resolution of this dispute to be dispositive. Instead, we determine that interpretation of the word, "continue," as it is utilized in § 36-5-101(k)(2) is central and pivotal to the issue at hand. As the trial court observed, there is no question that a valid child support order was in place for the benefit of the Child from the time of the parties' 2006 divorce through the date of his expected graduation in May 2019. We find the key issue here to be whether the word, "continue," as used in § 36-5-101(k)(2), may refer to the continuation of a valid child support order following a brief interruption in support. In this case, the interruption in support spanned forty-two days between the Child's expected graduation date (anticipated by the January 2019 Order) and the filing of Mother's petition to continue support.

In conducting this analysis, we adhere to the following longstanding principles of statutory interpretation:

_Woodard_, No. E2017-00200-COA-R3-CV, 2018 WL 3339754, at *3 (Tenn. Ct. App. July 9, 2018) ("Section 36-5-101(k)(1) was amended in 2008 to include the language in subsection two that allows the court to set support for a severely disabled person who reached the age of majority prior to the divorce.").

When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Est. of Tanner*, 295 S.W.3d 610, 613-14 (Tenn. 2009).

In support of his argument, Father points out that this Court has previously addressed the meaning of "continue" in the statute, citing *In re Conservatorship of Jones*, No. M2004-00173-COA-R3-CV, 2004 WL 2973752 (Tenn. Ct. App. Dec. 22, 2004). In *Jones*, a husband and wife had filed petitions to establish conservatorships concerning their two severely disabled sons, then ages twenty-three and nineteen, in the Seventh Circuit Court for Davidson County ("probate court") in 1995. *Id.* at *1. The probate court had subsequently appointed the husband and wife as co-conservators. *Id.* In June 2001, the mother had filed for divorce in the Second Circuit Court for Davidson County ("divorce court"). *Id.* at *2. The father had then filed a motion for child support, which the divorce court granted. *Id.* Upon the father's motion, the probate court subsequently confirmed the divorce court's child support order, and the mother appealed. *Id.* at *1.

On appeal in *Jones*, this Court reversed the award of child support. *Id.* at *15. Noting that no child support order had been in place when the parties' sons reached

majority, "and therefore there was no child support order to 'continue,'" this Court addressed the question of "whether the statute authorizes a trial court in a divorce case to order support for a child who turned eighteen years old before the divorce action was filed." *Id.* at *5. Upon examining the meaning of "continue" in what was then Tennessee Code Annotated § 36-5-101(p), substantively identical to the applicable version here of subsection (k), the *Jones* Court stated:

> Section § 36-5-101(p) states that it confers jurisdiction on a trial court to "*continue* child support" for a severely disabled child beyond the child's minority. This language indicates that the trial court is authorized to do so only where there was in existence a child support order that was entered when the child was a minor, or as a modification of a child support order that was valid when it was entered.

*Id.* at *11.

Noting that subsection (2) had been added to § 36-5-101(p) by the General Assembly in 1999, this Court also summarized the relevant legislative history as follows:

> The legislative debates over the 1999 amendment in fact reflect that the main goal in enacting the new provision was to eliminate the age limitation applicable to "handicapped or disabled" children in situations in which the child is severely disabled and residing with a parent. It indicates that the word "continue" was not included casually in the amendment; indeed, its inclusion was important to its passage. Concern was expressed that the statute as amended might be overly broad. In the March 23, 1999 House of Representatives debate, Representative Carol Chumney asked a question about whether the statute would apply in a hypothetical situation in which a healthy forty-year-old child of divorced parents suddenly became disabled and it was necessary for the adult disabled child to live with one of the parents. Representative L. Mike Williams stated that "after age 21 there is no custodial parent" unless that parent wants to *continue* care. In such a case, the Representative stated, the non-custodial parent should be obligated to help. Representative Chumney then expressed her opinion that "the word 'continue' is important to be in there." In the Senate debates, the new provision was described as merely "a housekeeping clarification bill" eliminating the twenty-one year old age limitation for support of severely, as opposed to mildly, disabled children.

*Id.*

Discerning no clear indication in the legislative history, the *Jones* Court turned to other jurisdictions for persuasive authority. *Id.* at *12. The *Jones* Court found a Texas Supreme Court decision, *Red v. Red*, 552 S.W.2d 90 (Tex. 1977), interpreting a similar statute to be particularly useful. *Jones*, 2004 WL 2973752, at *12. Summarizing the *Red* decision, the *Jones* Court stated:

> In that case, the parties were divorced in 1963, and the mother was awarded custody of the parties' fourteen-year-old disabled daughter. The father was ordered to pay child support until the daughter reached age eighteen. The father, however, voluntarily continued to provide support for the daughter until she became twenty-six years old in 1975. *Red*, 552 S.W.2d at 91. In May 1975, after the father stopped making his voluntary payments, the mother filed a petition in the divorce court to modify the 1963 divorce decree to provide that the father had a continuing duty to pay support for the disabled daughter. The applicable Texas statute provided that a divorce court had the authority to order that child support payments for a disabled child "be continued after the 18th birthday and extended for an indefinite period." *Id.* at 92 (quoting Tex. Fam. Code § 14.05 (1974)). The *Red* court held that the trial court was only authorized to require child support payments to "be continued" past majority if the request for continuation of such support were made before the child turned eighteen. The court determined that the original divorce decree was a final order, that the father's duties thereunder had been fully performed and discharged, and that "[s]ubsequent thereto the divorce court ceased to have jurisdiction over the subject matter." *Id.*; *see also In re Jacobson*, 842 A.2d 77, 79 (N.H. 2004) (holding that a statute allowing a court to extend support beyond the time of majority presupposes that an existing child support order was entered before the child reached the age of majority). Therefore, in *Red*, the divorce court's jurisdiction to "continue" the original child support order ended when the original child support obligation expired because the child reached majority.

*Id.*

This Court held in *Jones* that "a trial court has the authority to 'continue child support' for a severely disabled child only where an order awarding support was entered when the child was a minor, or as a modification of any other valid child support order." *Id.* at *13 (emphasis added). The parties in *Jones* had filed for divorce after the children turned eighteen. *Id.* Because no child support order had been entered when the parties' children had been minors, this Court determined that the divorce court lacked jurisdiction. *Id.*

Father relies on *Jones* to urge this Court to employ the reasoning set forth in *Red* and determine that the lapse in time between May 16, 2019, and Mother's filing of the June 2019 Petition divested the trial court of subject matter jurisdiction over the case at bar. *See Red*, 552 S.W.2d at 92. We respectfully decline to interpret *Jones* so broadly. The *Jones* holding prohibited the imposition of an initial child support order when a divorce petition is filed after a child is emancipated. *See Jones*, 2004 WL 2973752, at *13. *See also Catalano*, 2016 WL 3677342, at *7 (determining that although the child was seventeen when the divorce judgment was entered, the trial court lacked subject matter jurisdiction to continue child support when the underlying divorce judgment was void *ab initio* for lack of personal jurisdiction over the father); *Shaw*, 2011 WL 4379052, at *4 (concluding that the trial court lacked subject matter jurisdiction to grant an initial award of child support because the parties' child had already attained the age of eighteen when the mother had filed for divorce); *Sizemore v. Sizemore*, No. E2005-01166-COA-R3-CV, 2007 WL 2198358, at *10 (Tenn. Ct. App. July 30, 2007) ("The authority to make an initial award ceases to exist in the absence of the invocation of a court's jurisdiction before the child reaches the age of 18 or the provisions of T.C.A. § 34-1-102(b) are otherwise implicated.").

By contrast, in this case, there is no dispute that a valid child support order was in place to benefit the Child through at least the Child's expected graduation date of May 16, 2019. Therefore, although the holding in *Jones* is helpful, we do not find that it fully addresses the instant situation. The issue of whether "continue," as it is utilized in § 36-5-101(k)(2), may refer to the continuation of a valid child support order following a brief interruption in support, here one of forty-two days, appears to be a question of first impression in Tennessee.

Mother relies on a Virginia circuit court case, *Zellmann v. Zellmann*, 79 Va. Cir. 575, 2009 WL 7416540, at *2 (Va. Cir. Ct. Dec. 14, 2009), to argue that the gap in time between the Child's projected high school graduation and Mother's filing of the petition to extend child support did not divest the trial court of subject matter jurisdiction. Although certainly not a controlling authority for this Court, we find *Zellman* to be persuasive in its interpretation of a similar use of "continuation" in a Virginia child support statute. *See Zellman*, 2009 WL 7416540, at *3-6. In *Zellman*, the mother of a disabled child requested child support one month and eighteen days after the previous child support obligation had terminated. *Id.* at 2. Relying on the analysis in *Red*, as applied in *Smith v. Smith*, 74 Vir. Cir. 378, 2007 WL 5984180, at *2 (Va. Cir. Ct. Nov. 27, 2007), the father responded by arguing that the court lacked subject matter jurisdiction. *Zellman*, 2009 WL 7416540, at *4-5 (citing *Red*, 552 S.W.2d at 90-92). Looking to the plain language of the dictionary definition, the *Zellman* court acknowledged that "'continuation' is defined as not only a continuous, uninterrupted

period, but also as a 'resumption after an interruption.'" *Zellmann*, 2009 WL 7416540, at *3 (quoting the online version of the Merriam-Webster Dictionary). The *Zellmann* court determined that the brief gap in time did not divest it of subject matter jurisdiction to continue a child support order. *Id.* at *6.

Indeed, in common usage, "continue," as relevant to the case at bar, may be defined as either "to maintain without interruption a condition, course, or action" or "to resume an activity after interruption." *See* Merriam-Webster Online Dictionary (2024) (www.merriam-webster.com (derived from Merriam-Webster's Collegiate Dictionary 11th ed.)). In turn, "interruption" is defined as "a stoppage or hindering of an activity <u>for a time</u>" or "a break in the continuity of something." *Id.* (emphasis added). The fact that "continue" may be interpreted as describing an activity conducted either "without interruption" or "after interruption" indicates that usage of the term in the statute is somewhat ambiguous. *See, e.g., Hall v. Humphrey*, 673 S.W.3d 613, 622-23 (Tenn. Ct. App. 2023) ("[W]e agree with Conservator that the language of § 34-3-105(d) is ambiguous insofar as it could be construed in two ways."). However, the legislative history of the inclusion of "continue" in Tennessee Code Annotated § 36-5-101(k)(2) demonstrates that the General Assembly included the term to ensure that parents would not be obligated indefinitely to support adult children who become severely disabled after reaching the age of majority. *See Jones*, 2004 WL 2973752, at *11. We find no indication that the General Assembly intended that a brief interruption in child support, such as the forty-two-day period here, should divest a trial court of subject matter jurisdiction when that court had previously exercised subject matter jurisdiction to award such support before a child attained the age of majority.

We hold that under Tennessee Code Annotated § 36-5-101(k)(2), a brief interruption in child support does not divest a trial court of subject matter jurisdiction to consider a petition to extend support for a severely disabled child beyond the age of majority. We decline to create a bright-line rule for a length of time that would constitute a "brief" interruption. However, considering the totality of the circumstances in this case—including (1) the existence of a valid child support order entered at the time of the parties' divorce, (2) the entry of the January 2019 Order continuing child support, and (3) the forty-two-day gap between the graduation date of the Child's high school class and Mother's filing of the petition—we conclude that the interruption in this case was brief and that the trial court maintained subject matter jurisdiction to consider Mother's petition and ultimately to continue Father's child support obligation upon finding that the Child was severely disabled.[4]

---

[4] Father has not raised an issue on appeal concerning the trial court's determination that the Child was severely disabled.

## V.  Vocational Assessment

Father also contends that the trial court abused its discretion by setting the amount of Father's child support obligation without first requiring that the Child undergo a vocational assessment.  Father argues that because a vocational assessment would have revealed whether and to what extent the Child could contribute to his own living expenses, the trial court should have offset Father's obligation by including in its calculation an estimate of the Child's potential earnings.  Mother responds that the trial court acted within its discretion to set the child support amount without first requiring a vocational assessment.  Upon thorough review, we agree with Mother on this issue.

In support of his postulate, Father relies on this Court's decision in *Lillard v. Lillard*, No. M2019-02305-COA-R3-CV, 2021 WL 861769 (Tenn. Ct. App. Mar. 8, 2021).  We find *Lillard* to be highly distinguishable from the instant action.  In *Lillard*, the trial court determined that a severely disabled child was capable of earning $299.75 per month, predicating its decision primarily on testimony from the child's supervisor at Lowe's, where the child worked twelve to twenty-four hours per week.  *Id.* at *8.  This Court affirmed the lower court's decision because the appellant in that case had offered no contradictory evidence at trial.  *Id.*  By contrast, the Child in the present action was not employed at the time of trial.

In the February 2022 Order, the trial court found that the Child was "unable to work in any form of even the lowest level ongoing job or employment" and that the Child was "not able to provide for any form of financial support for himself, other than what he [was] receiving in his disability."  However, the trial court also found that a vocational assessment for the Child was "necessary" and "imperative" and "should begin immediately."  In Father's motion to alter or amend the final judgment, he argued that the trial court should have required that the Child undergo a vocational assessment before setting a child support amount.  After hearing argument on the motion to alter or amend, the trial court clarified from the bench:

> [W]hat I said and did in this order, respectfully, Counselors and [Father], was as much for your child as it was for anything else.  I think your child needs a vocational assessment because, if there are things he can do, I think that would be good.  It will help him.  That would be something to do and look forward to and achieve.  That was the – really my heart on doing that.

It appears from the transcript that the trial court did not intend for a vocational assessment to be a condition for determining Father's child support obligation but rather determined it to be in the Child's best interest.  We do not find an abuse of discretion in

- 14 -

the court's decision to set child support for the Child without first requiring a vocational assessment.

We note, however, that the trial court's findings in the February 2022 Order regarding the value of a vocational assessment were unclear in that the court did not explicitly set forth whether such an assessment was required or who would be responsible for scheduling such an assessment. In the February 2022 Order, the trial court stated the following in its factual findings:

> [T]here is no question that a vocational assessment and vocational training is a necessary step for this child. The court finds this assessment process and/or training should begin immediately.
>
> * * *
>
> As stated above, the Court finds that it is imperative that the parents have a vocational evaluation done on [the Child] immediately in a local setting.

In the context of the court's December 2022 Order and denial of Father's motion to alter or amend, it appears that the court's above-quoted statements constituted findings, rather than an order, and were advisory in nature. We emphasize that a court speaks through its written orders, which should be "clear, specific, and unambiguous." *See Konvalinka*, 249 S.W.3d at 354.

Moreover, we determine that the trial court's subsequent orders setting child support and denying Father's motion to alter or amend superseded any indication in the February 2022 Order that a vocational assessment was required. Accordingly, we discern no enforceable directive requiring a vocational assessment in the February 2022 Order.

## VI. Attorney's Fees at Trial

Father urges that upon a determination that the trial court lacked subject matter jurisdiction to consider Mother's petition, this Court should reverse the trial court's award to Mother of reasonable attorney's fees. However, having affirmed the trial court's determination that it retained subject matter jurisdiction over this action, we deem Father's issue regarding attorney's fees to be pretermitted as moot.

## VII. Attorney's Fees on Appeal

To address the issue of attorney's fees on appeal, we must first determine whether Mother, as an appellee, properly presented a request for attorney's fees on appeal.

- 15 -

Mother mentions her request twice in her appellate brief. First, in response to Father's issue challenging the attorney's fees awarded to Mother by the trial court, Mother includes an argument section in her appellate brief maintaining that the attorney's fee award was within the trial court's discretion. As the last sentence in this argument, Mother states: "As a natural result, [Mother] should be awarded attorney fees on appeal for protecting the child's rights to be supported." Second, in concluding her appellate brief, Mother requests affirmation of the trial court's judgment and "whatever further relief this Court deems just and proper at this time, including an award of attorney fees on appeal, if appropriate." Mother has not raised the issue of attorney's fees on appeal in her statement of the issues, and she has not offered any argument specific to this request beyond the statement quoted above that an award of attorney's fees on appeal would be a "natural result" of this Court's affirming the trial court's award of attorney's fees. Father did not file a reply brief and so has not responded to Mother's request for attorney's fees on appeal.

Our Supreme Court has recently distinguished between the requirement that an appellant raise an issue concerning attorney's fees on appeal in a statement of the issues and what may constitute an appellee's properly presented request for attorney's fees. *Charles v. McQueen*, 693 S.W.3d 262, 283-84 (Tenn. 2024). As the *Charles* Court explained:

> When a request for appellate attorney's fees does not seek relief from the judgment below, an appellee is not required to include the request in the statement of issues. Tenn. R. App. P. 27(b). But an appellee is required to present the request to the appellate court by raising it in the body of the brief, adequately developing the argument, and specifying that relief in the brief's conclusion. *See* Tenn. R. App. P. 27(a)(7)(A), (a)(8), (b).

*Id.* at 284 (footnote omitted).

Here, we determine that Mother has minimally raised the issue by (1) citing to Tennessee Code Annotated § 36-5-103(c) in support of her contention that the trial court's award of attorney's fees should be affirmed, (2) connecting this argument concerning attorney's fees at trial to her request for attorney's fees on appeal as a "natural result," and (3) confirming her request in the conclusion of her brief. *See id.*; *cf. SH Trelleborg Cadence, LLC v. Smythe*, No. M2023-00707-COA-R3-CV, 2024 WL 4003677, at *14 (Tenn. Ct. App. Aug. 30, 2024) (concluding that the appellee failed to preserve a request for attorney's fees on appeal when the "entirety of [the appellee's] discussion of this issue [was] contained in the request itself").

- 16 -

The version of Tennessee Code Annotated § 36-5-103(c) (West May 24, 2004, to August 9, 2010) applicable to this action provided in pertinent part that at the court's discretion, "the spouse or other person to whom the custody of the child, or children is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support[.]" Upon consideration, and particularly noting the question of first impression concerning child support raised by Father in this matter, we exercise our discretion to decline Mother's request for attorney's fees on appeal.

## VIII. Conclusion

For the foregoing reasons, we affirm the trial court's judgment. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs below. Mother's request for attorney's fees on appeal is denied. Costs on appeal are assessed to the appellant, Jeromy Tyson Ratcliff.

s/ Thomas R. Frierson, II
THOMAS R. FRIERSON, II, JUDGE